## Consolidated Underwriters et al. v. Richards' Adm'r et al.

Jan. 10, 1939.

STEINFIELD & STEINFIELD and P. M. BASHAM for appellants.

WOODWARD, DAWSON & HOBSON and WALLS & KINCHELOE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On April 11, 1936, a taxicab, owned by L. M. Rush and driven by his son, Elvis Rush, and an autombile owned by Joe Greer, driven by Robert Kendall, met and came into collision on highway No. 60 in Breckinridge county, a short distance west of the Sinking creek bridge.

As a result of the collision accident, Isabel Bowman and Louise Hesler, occupants of the taxicab, sustained injuries and Earl Richards, who was riding on its left running board, was killed.

In actions against the owner and driver of each of

the colliding cars (based on the alleged concurrent negligence of both drivers) the administrator of Earl Richards recovered judgment in the sum of $5,000 and Misses Bowman and Hesler recovered judgments in the respective sums of $5,000 and $500, from which all of the defendants appealed.

No supersedeas bonds were executed when prosecuting appeals from those judgments.

At the time of the accident, L. M. Rush, the owner of the taxicab, and Elvis Rush, its driver, were protected by an insurance policy of the type required to be carried by the owners of taxicabs, which was written by the appellant, Franklin Mutual Insurance Company. By its policy, the company indemnified the owner and driver against loss by reason of liability imposed by law for injuries caused by negligent operation of the car, and further indemnified the people of the commonwealth against loss in not collecting a judgment based upon negligent operation of a taxicab. The maximum liability of the company under this policy, arising out of any one accident, was expressly limited to the sum of $5,000.

At the same time, Joe Greer and Robert Kendall were also protected by a policy written by the appellant, the Consolidated Underwriters, indemnifying them against loss by reason of the liability imposed by law because of the negligent operation of Joe Greer's automobile that Kendall was driving at the time of the accident. This policy protected the insured Greer and his agents to the extent of $5,000 if one person was injured or killed, and to a limited maximum of $10,000 if more than one person was injured or killed on account of any one accident.

Since these judgments obtained in the Breckinridge circuit court against the four thus insured defendants were not superseded, executions were forthwith issued thereon against the insured defendants and returned endorsed "no property found."

Thereupon, because of these "nulla bona" returns made upon the executions issued on these several judgments recovered against the defendants, evidencing their insolvency, the appellees, J. T. Walls, administrator of Earl Richards, Isabel Bowman, by her father, Win Bowman, as next friend, and Louise Hesler, by E.

H. Shelman, as next friend, instituted these present suits, by filing their separate petitions in equity against the same four respective insured taxicab and car operators and owners, against whom they had recovered the judgments stated supra in their prior actions, and also against their insurance carriers, the Consolidated Underwriters and the Franklin Mutual Insurance Company.

The appellees, by their petitions in these new equity suits, all of which were substantially the same, alleged and set out that the Greer car (involved in the collision and driven by Kendall) was, as stated, insured by the appellant, Consolidated Underwriters, and the L. M. Rush taxicab, driven by Elvis Rush, was insured by the Franklin Mutual Insurance Company, at the time of the collision of the cars, with resulting injuries to the plaintiffs, Misses Bowman and Hesler and the death of Richards.

The petitions further alleged and set out the terms of these policies issued by each of the two appellant companies to the defendant car owners, whereby they agreed to pay any judgment for damages sustained by any person as the result of the negligent operation of the Rush taxicab and the Greer car, not to exceed the respective maximum amounts of $5,000 and $10,000.

The petitions also pleaded the institution of the actions against the insured, as stated supra, the recovery therein of judgments in the Breckinridge circuit court and that executions were issued on said judgments and placed in the hands of the sheriff of Breckinridge county, which were returned endorsed "no property found."

Plaintiffs further pleaded that the defendant insurance companies employed counsel who defended the original actions in which verdicts and judgments were rendered against the insured.

The insurance companies filed motions to elect, which were overruled, whereupon they filed answers, pleading that appeals were then pending in this court from the original judgments, but admitting that no supersedeas bond had been executed, and further pleading that these actions against the insurance companies could not be maintained until a final decision of the appellate court or "court of last resort," fixing and determining the liability of their insured car owners and drivers

under the judgments returned in the lower court against them.

Thereafter, on April 2, 1937, these cases coming on to be heard upon the demurrers filed thereto and the pending motions having been argued and submitted, and the three actions having by consent of parties been ordered consolidated, the court sustained the plaintiff's demurrers to each of the three answers and to the answers as amended, to which the defendants excepted, when, the consolidated causes being submitted on the motion of plaintiffs for a judgment on the face of the pleadings, judgment was accordingly entered in each of the suits in favor of plaintiffs.

Thereupon the defendant insurance companies executed supersedeas bonds and prosecuted this appeal therefrom.

It is obvious, from the above given recitation of the pleadings, that the question here presented for our review and determination is the propriety of the construction given by the lower court of the provisions of the two insurance policies here issued the owners of the car and taxicab.

The Franklin Mutual Insurance Company, while an appellant here, has not favored us with a brief setting out or arguing the grounds upon which it asks a reversal of the judgment against it, and, therefore, we are warranted in assuming that it has abandoned its insistence, evidenced by this appeal, that the lower court's judgment construing the provisions of its policy issued the assured, L. M. Rush and Elvis Rush, owner and driver of the taxicab, was erroneous.

However, the other of the appellants, the Consolidated Underwriters, has by counsel submitted a very comprehensive and able brief, wherein the following two grounds for reversal of the judgment against it are argued: that the court's construction of the provisions of the policy ignore the two conditions contained therein, providing (1) that no action would lie against the company until the rights of the parties had been finally settled and (2) the maximum limit of the company's liability, as fixed by the policy in the sum of $10,000, for injuries inflicted in any one accident.

In support of the first objection, appellant contends that there is no cause of action against it until the rights

of the parties are settled and that these suits, having been filed before there was such final determination of its liability in the "court of last resort," should have been abated.

It contends that the provisions of its policy here involved are unlike those of the policy issued by its co-appellant, the Franklin Mutual Insurance Company, in that the latter company, by the terms of its policy, indemnified the owner and driver against loss by reason of liability imposed by law and also indemnified the people of the commonwealth of Kentucky against loss in not collecting a judgment based upon the negligent operation of the assured's taxicab.

It insists that the Consolidated Underwriters' policy was written to indemnify its assured, Greer, against loss by reason of liability and was only to indemnify him according to the terms of the contract of insurance, which was not written for the benefit of the appellees, but only for the benefit of those named in the policy.

The provision of the policy upon which this contention is based is as follows:

"No action shall lie against the Underwriters to recover upon any claim or for any loss defined under insuring clauses 1 and 2 hereof, unless brought after the amount of such claim or loss shall have been fixed and rendered certain, either by final judgment against the subscriber by the court of last resort after trial of the issue, or by agreement between subscriber and claimant with the written consent of the underwriters, nor in any event unless brought within two years thereafter. The insolvency or bankruptcy of the subscriber shall not relieve the Underwriters from the payment of damages for injury sustained or loss occasioned during the life of this contract and in case execution against the subscriber is returned unsatisfied in any action brought by the injured person or his personal representative in case death results from the accident, because of such insolvency or bankruptcy then action may be maintained by the injured person or his representative against the underwriters under the terms of the contract for the amount of judgment in said action, but not exceeding the limits of indemnity stated in this contract."

It may be here also noted that the somewhat similar provision of the Franklin Mutual Insurance Company's policy is as follows:

"In consideration of the premium stipulated in the policy to which this endorsement is attached, the insurer agrees to pay any final judgment rendered against the assured to any person, except employees of the assured. * * *

"The insurer further agrees that, upon its failure to pay any such final judgment within sixty (60) days from the date of its rendition or final affirmance on appeal, the judgment creditor may maintain an action against it in any court of competent jurisdiction to enforce such payment. The policy shall be a continuing indemnity, the indemnity thereof shall not be reduced as to any succeeding accident by any payment of any claim or by any judgment for any previous accident."

The appellant insists that it had the right to put in its policy any conditions or limitations as might be agreed upon between the parties to the policy, so long as they did not become inconsistent with or contrary to the law; that the restrictive "no action" and "insolvency" clauses of the policy, supra, must be construed as limited by the other terms of the contract in which such insolvency clause occurs; that is, it contends that the insolvency clause of the contract is not a separate and independent provision thereof, which serves, upon such fact being established, to give the right of immediate action against the company, without regard to the other provision of the contract, that before it can be sued, its liability under the contract must be finally fixed or determined by a "court of last resort"; that although the insolvency of the company's assured has been established by the "nulla bona" returns made upon the executions issued on the judgments against them, the appeals therefrom are now pending, although without executing supersedeas bonds, and therefore the appellant's liability has not been finally determined. It may be here observed that upon appeal the judgments of the lower court were affirmed and the appellant's liability and the amount thereby fixed—but this result is not stated as in itself disposing of the appellant's contention that this action was prematurely brought.

It contends that the judgments of the circuit court

rendered against its assured were not final determinations of its or the assured's final liability to the injured appellees, but that same was only final, where an appeal was taken therefrom, for purposes of appeal.

The appellant argues, as a reason for supporting its insistence that the language of the quoted provision of the policy exempts it from liability until the appellate court has finally passed on the appeal taken by the assured, that, as the judgment creditors in the original action have no property, if the insurance company had paid them the amount of the original judgments and they should later be reversed upon appeal, it could not have collected back the money paid the insolvent assured.

Conceding that such a situation might arise, it appears sufficient response to such contention that the insurance company could have avoided such a hazard by executing a supersedeas bond upon the taking of the appeal from the judgments, which would have stayed their collection against the assured until liability was fixed by a decision of the appeal, or the right of action against the insurer accelerated by establishing the insolvency of insured by executions being issued on the judgments and returned endorsed "no property found" during the pendency of the appeal.

Appellees contend that this "no action" clause of the policy does not, in view of its further "insolvency" provision, protect the insurer while its assured is prosecuting an appeal from a judgment, on which execution has been issued and returned unsatisfied. where no supersedeas bond has been executed.

Arguing that such should be the construction given the insolvency provision of the policy, appellees contend that unless it be so construed, it is without effect upon the preceding provision of the policy, prohibiting an action against the insurer unless brought after the amount of such claim or loss shall have been fixed by final judgment against the subscriber, whereas clearly its purpose was to precipitate the right of action against insurer, where, through failing to supersede the judgment, it suffered insured to be harassed by execution issued on the judgment and his insolvency to be established by "nulla bona" returns made thereon during the pendency of the appeal.

Our conclusion that the appellees are right in their contention is supported by the language of the opinion of this court in the case of New York Indemnity Company v. Ewen, 221 Ky. 114, 298 S. W. 182.

There, as here, the policy of insurance issued by the company contained a paragraph very similar to the one found in the policy here before us, which provided that [page 183]:

"The insolvency or bankruptcy of the assured shall not relieve the company from the payment of the indemnity provided by the policy, but shall entitle the claimant to maintain an action against the company for the recovery of such indemnity."
The language of the opinion is that:

"Formerly, under the standard form of policy issued by these indemnity companies, it was held that the insured party had no claim against the insurance company if the tort-feasor who was insured was insolvent (Fidelity & Casualty Company v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924), and this was universally the rule of law in this country. In 1918, to meet what was regarded as the injustice of this situation, the state of New York passed an act, the substance of which was that, after the 1st day of January, 1918, no policy of insurance indemnifying persons against loss or damage to person or property * * * and for which loss or damage the person insured is liable, should be issued or delivered to any person in New York by any corporation authorized to do business in that state, unless there should be incorporated in such policy a provision that—

" 'The insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injuries sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, that then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of

the judgment in the said action not exceeding the amount of the policy.' Laws N. Y. 1918, c. 182.

"The constitutionality of this New York law was upheld by the Supreme Court of the United States in the case of Merchants' Mutual Automobile Liability Insurance Company v. Smart, 267 U. S. 126, 45 S. Ct. 320, 69 L. Ed. 538. To comply with this New York law, which has been copied in a great many of our sister jurisdictions, the insurance companies incorporated in their policies provisions identical with or similar to paragraph G [as quoted supra] herein relied on. * * *

"Paragraph G, in our judgment, was not intended to change the effect of the policy in any respect except to provide that, if after a judgment had been obtained against the assured and the injured party was then unable to collect that judgment by reason of the insolvency or bankruptcy of the assured, then and only in that event the insurance company would be responsible to the injured party in a direct action."

As it was within the power of the appellant insurance company, as stated supra, to have prevented this insolvency provision of the statute coming into operation by the issuance of a supersedeas bond, preventing the establishment of the insolvency of the assured by "nulla bona" returns made upon the executions issued on the unsuperseded judgments, it must be taken to have waived the "no action" clause of its policy by failing to supersede the judgments rendered by the lower court against the assured.

While it may be conceded, as argued by appellant, that the rule of law is as stated in the case of Sun Indemnity Company v. Dulaney, 264 Ky. 112, 89 S. W. (2d) 307, that the court, in determining insurer's liability under the policy, must give effect to all the provisions of the policy, liberally construing them in insured's favor, and may not add to or strike from the conditions of the policy and that one suing on the contract must accept the contract as it was made, we are, in giving such construction to the insolvency paragraph of the policy under consideration, invoking the aid of that very rule.

Appellant's next objection is that the court has vio-

lated the provision of the policy limiting the maximum amount of liability to be incurred thereunder by the insurer, in that the judgments here rendered against the two appellant insurance companies, jointly and severally, were for a total amount of some $10,500, exclusive of the additional amounts, by way of interest, costs and penalties, added thereto.

As to this, however, we conceive that such statement of the court's rulings is erroneous, in that the sum total of the three judgments rendered against each of the appellants was not in excess of the maximum amount named in their policies issued the assured for any one accident, but, on the other hand, the amount of the judgment recovered against them was so apportioned between the three judgments recovered by the appellees that the judgment rendered against each company was not in excess of the maximum amount named in its policy.

The court, in adjudging such amounts to be recovered by the appellees, with additional amounts allowed for interest, costs and penalties, did not violate the provisions of the policy, in that by the provisions of the policy, section C, it is provided that:

"In addition to these limits the Underwriters will also pay expense incurred by them in connection with the investigation and adjustment of claims under insuring clauses one and two; all costs taxed against the subscriber in any legal proceeding while being defended by the Underwriters on behalf of the subscriber as provided in the preceding condition; interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Underwriters' liability as limited in insuring clauses one and two, unless the Underwriters shall have elected to settle such claim or suit, or to pay such limits as may be applicable thereto."

In the case of Aetna Life Insurance Company v. Bowling Green Gas Light Company, 150 Ky. 732, 150 S. W. 994, 43 L. R. A., N. S., 1128, it was held that where, as here, the contract of insurance stipulated that the insurer would pay a fixed sum as indemnity to the assured, and in addition thereto would pay the expenses of litigation, if litigation was engaged in by its direction, the words "expense of litigation" include the costs

of the suit incurred by the assured, the damages awarded the claimant on an appeal by the assured and the interest that accrued on the judgment against assured.

Such enunciation of the rule, that the insurer is liable for interest, penalties and costs in cases where it elects to contest the claim, as well as for the judgment rendered against its assured, has been generally adopted and repeatedly reannounced and applied. See cases of Fidelity & Casualty Company of New York v. Stewart Dry Goods Company, 208 Ky. 429, 271 S. W. 444, 43 A. L. R. 318; Y. M. C. A.'s Assignee of Paducah v. Indemnity Insurance Company of N. A., 244 Ky. 473, 51 S. W. (2d) 463; American Surety Company of New York v. Noe, 245 Ky. 42, 53 S. W. (2d) 178; Haselden v. Home Insurance Company of New York, 247 Ky. 530, 531, 57 S. W. (2d) 459; Jefferson Standard Life Insurance Company v. Hurt, Atlantic Life Insurance Company v. Hurt, 254 Ky. 603, 72 S. W. (2d) 20; Commonwealth Life Insurance Company v. Gault's Adm'rs, 256 Ky. 625, 76 S. W. (2d) 618; Sun Indemnity Company v. Dulaney, 264 Ky. 112, 89 S. W. (2d) 307.

We are, therefore, for the reasons hereinbefore indicated, led to conclude that the learned trial court properly construed the provisions of the insurance contracts here involved, as failing to present a defense under the facts shown and the causes of action set out in plaintiffs' petitions, and for such reason the judgments should be and they are affirmed.