708 P.2d 457

Royce A. RING and Anne L. Ring, husband and wife, Plaintiffs, Counterdefendants-Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Garnishee, Defendant-Appellee.

No. 1 CA–CIV 6754.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 8, 1985.

Jennings, Strouss & Salmon by Jefferson L. Lankford, Michael A. Beale, Phoenix, for plaintiffs, counterdefendants-appellants.

Ridenour, Swenson, Cleere & Evans by James W. Evans, Harold H. Swenson, Ruth Harris Hilliard, Phoenix, for garnishee defendant-appellee.

## OPINION

BROOKS, Judge.

Appellants (Rings) initiated garnishment proceedings against appellee (State Farm) to enforce a judgment against the judgment debtor/insured's (Taylor) automobile liability insurance policy. The judgment, in the amount of $1,321,500.00, arose out of an automobile collision between the Ring and Taylor vehicles. State Farm appealed the judgment on behalf of Taylor without filing a supersedeas bond or obtaining an order staying execution.[1]

Taylor was insured under an automobile liability policy issued by State Farm. The garnishment proceeding filed by Rings sought not only the policy limits of $50,000 but also the excess amount of the judgment against Taylor due to the alleged bad faith of State Farm in failing to settle Rings' claim within the policy limits. State Farm responded to the writ of garnishment asserting that under the terms of the policy, it was not indebted to Taylor until the judgment had been affirmed on appeal. It further contended that a judgment creditor cannot institute garnishment proceedings based upon the alleged bad faith of the insurer without an assignment of the insured's bad faith claim. Rings and State Farm filed cross-motions for summary judgment on the issue of whether the garnishment action was premature pending determination of the appeal, and whether an action for excess liability could be maintained in a garnishment proceeding without an assignment from the insured. The trial court awarded summary judgment in favor

of State Farm, denied Rings' motion for summary judgment, and assessed attorney's fees of $3,126.50 against Rings. This appeal followed.

The first issue is whether the "no action" clause of the automobile policy prevents garnishment of the policy limits where State Farm has not stayed the judgment against its insured by filing a supersedeas bond.[2] It is the position of State Farm that the "no action" clause of its policy defers its obligation to pay on behalf of the insured until the judgment is "finally determined on appeal." We agree.[3]

As noted by Rings, it has been held or recognized in a number of cases that a liability insurer has the duty to pay an injured person, upon a judgment obtained against the insured if the judgment is not superseded, even though an appeal from the judgment is pending. *See* 8 *J. Appleman, Insurance Law and Practice*, § 4854 (1981). Substantially all of those cases, however, involved what has come to be known as the *standard* "no action" clause, which simply provides that the insurer's liability does not arise until the amount of the insured's obligation to pay has been "finally determined by judgment against the insured after trial." Thus, in *General Accident Fire & Life Assurance Corp. v. Harris*, 117 So.2d 44 (Fla.App.1960), the court stated that the standard "no action" clause *clearly contemplates* that the insured's liability shall be considered to be finally determined after trial by the entry of judgment against him, regardless of whether an appeal is subsequently taken. *See also,*

---

1. The judgment in favor of Rings was affirmed by this court in *Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121 (App.1984).

2. The relevant provision of the policy states:
   2. Action Against Company. No action shall lie against the company:
   (a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.
   (b) Under coverages A and B, until the amount of the insured's obligation to pay shall have been finally determined *either by judgment against the insured after actual trial and affirmed on appeal, if an appeal has been taken from said judgment,* or by written

agreement of the insured, the claimant and the company. (Emphasis added.)

3. State Farm has filed a motion to dismiss this appeal as being moot by reason of the fact that the underlying judgment has now been affirmed on appeal. *See supra,* footnote 1. However, we choose to address the issues on the merits in order to determine if State Farm was properly awarded attorney's fees as the prevailing party in the trial court. Further, the issues may well reappear in subsequent proceedings between these parties. State Farm's motion to dismiss is therefore denied.

*Clougherty v. Royal Ins. Co.*, 102 R.I. 636, 232 A.2d 610 (1967); *William v. Moran*, 233 So.2d 110 (Miss.1970); *Tipton v. Bready*, 229 F.Supp. 301 (E.D.Okla.1964).

The "no action" clause in the instant case, however, is unique in that it specifically provides that no action shall lie against State Farm until the amount of its insured's obligation to pay is fully determined by judgment *"and affirmed on appeal, if an appeal has been taken ...."* (Emphasis added.) Although no authority has been cited which directly construes policy language identical to the clause at issue, our research has disclosed several cases which have suggested that such a policy provision would be enforceable in accordance with its specific terms. Thus, in *Conley v. Singleton*, 171 So.2d 65 (Fla. 1965), where an injured person had brought garnishment proceedings against an insurer upon a judgment obtained against the insured while an appeal was pending, without supersedeas, the court rejected the insurance company's contention that its liability under the policy was only contingent and would not become absolute until after the judgment against the insured was affirmed on appeal. The court stated, however, that if the insurer desired to avoid the consequences of the rule adhered to by the court, it could revise the policy terms by specifically providing that liability will not accrue "until after judgment rendered against the insured has been affirmed on appeal." Also, in *Larson v. Dauphin Realty Co.*, 228 F.Supp. 952 (E.D.Pa.1964), an insurer, which had appealed but had not superseded the injured person's judgment against its insured, resisted garnishment proceedings arguing that as far as its obligation to pay was concerned, "finally determined by judgment," as used in the standard "no action" clause of the policy, meant affirmed on appeal, even though such words were absent from the policy. In rejecting this argument, the court stated:

If the insurer wanted to protect itself against such a situation as is involved in the instant case it could have easily so

provided by apt language such as "by judgment which has been affirmed on appeal" or some other appropriate selection of words.

228 F.Supp. at 953–54. The State Farm policy in the instant case contains substantially the same language as was suggested in *Conley* and *Larson.*

Rings also rely, however, on *Consolidated Underwriters v. Richard's Administrator*, 276 Ky. 275, 124 S.W.2d 54 (1939). In that case, the policy stated that no action could be taken against the company until the amount of the loss

shall have been fixed and rendered certain, either by final judgment against the subscriber *by the court of last resort* after trial of the issue, or by agreement ....

124 S.W.2d at 57. (Emphasis added.) Notwithstanding this language in the policy, the court ruled that an accident victim could proceed to garnish the insurer if no supersedeas bond had been filed. Rings' analysis of this case, however, does not take into account another provision in the applicable insurance policy upon which the Kentucky court relied in reaching its decision. This provision specifically allowed a direct action by injured persons against the insurer upon the insured's insolvency. *See also Cassidy v. Southern Farm Bureau Casualty Ins. Co.*, 135 F.Supp. 757 (D.C. Ark.1955). (Arkansas statute allowed for a direct action against an insurer when a writ of execution was returned unsatisfied.) Arizona has no statute comparable to Arkansas' and the State Farm policy has no provision allowing a direct action when a writ of execution is returned unsatisfied.

This court must construe an insurance contract according to its terms where those terms are clear and unambiguous. *Farmers Ins. Co. v. Zumstein*, 138 Ariz. 469, 675 P.2d 729 (App.1983). We find the language of the "no action" clause at issue to clearly provide that State Farm's obligation to pay on behalf of its insured does not arise until an underlying

judgment has been affirmed on appeal, if an appeal is taken.

■ Rings next argue that the "no action" clause conflicts with the provision in the policy which requires State Farm "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages." Citing *Anderson v. Pickrell,* 115 Ariz. 589, 566 P.2d 1335 (1977), Rings correctly note that the posting of a supersedeas bond, as required by Rule 7, Arizona Rules of Civil Appellate Procedure, is the only means by which enforcement of a judgment is stayed pending appeal. However, it is undisputed that the "no action" clause does not purport to eliminate the insured's personal liability for the judgment pending an appeal, absent the posting of a supersedeas bond, it merely determines when State Farm must pay a judgment on its insured's behalf. We find no conflict between the pertinent provisions of the policy and conclude that there is no violation of the principles set forth in *Anderson.*

■ Rings also contend that the "no action" clause frustrates public policy and violates Arizona's Safety Responsibility Act, A.R.S. § 28–1101, et seq.[4] We disagree. State Farm has never denied the existence or validity of its insurance policy. Its contractual obligation to pay the policy limits on behalf of its insured simply does not arise until such time as the judgment has been affirmed on appeal. This clear and unambiguous provision violates neither public policy nor the Safety Responsibility Act.

The final issue involves the question of whether the potential excess liability of an insurer for an alleged bad faith failure to settle is subject to garnishment by the judgment creditor without an assignment of the insured's rights.

In *General Accident Fire & Life Assurance Corp. v. Little,* 103 Ariz. 435, 443 P.2d 690 (1968), our supreme court seemed to approve the general rule that a judgment creditor cannot institute garnishment proceedings based upon the bad faith of an insurer. However, the language is dicta and the establishment of any rule is uncertain. Thus, the issue is one of first impression in this state.

■ It is clear in Arizona that a judgment creditor must obtain an assignment of the insured's rights before proceeding *directly* against the insurer for liability in excess of the policy limits. *General Accident Fire & Life Assurance Corp. v. Little, supra.* This places Arizona in line with the vast majority of the courts on this issue. *See Bean v. Allstate Ins. Co.,* 285 Md. 572, 403 A.2d 793 (Md.App.1979); *Cue v. Casualty Corp. of America,* 537 P.2d 349 (Okla.App.1975). Basically, two major factors stand behind these courts' refusal to allow direct actions against insurers without the benefit of an assignment. First, there is no injury to the plaintiff from the insurer's alleged exercise of bad faith. Secondly, the injured plaintiff is a stranger to the fiduciary relationship between the insured and his insurer. *Bean v. Allstate Ins. Co., supra; Ammerman v. Farmers Insurance Exchange,* 430 P.2d 576 (Utah 1967). These reasons for denying direct actions against insurance companies were well stated by Professor Keeton in his article, *Liability Insurance and Responsibility for Settlement,* 67 Harv. Law Review 1136, 1176:

> * * * The excess liability of company arises out of the relationship between insured and company. Claimant is a stranger to that relationship. Not only is company without any duty to claimant

**4.** Rings specifically refer to A.R.S. § 28–1170(F)(1) which provides as follows:

> Every motor vehicle liability policy is subject to the following provisions which need not be contained in the policy:
> 1. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or

> damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy.

to accept claimant's reasonable settlement offer, but also, if there is a sizeable disparity between the settlement offer and the amount of the judgment obtained in the trial which follows refusal of the offer, claimant is benefitted rather than harmed by company's refusal to settle. It would therefore be anomalous to permit claimant to recover *directly* against company in his own right * * * (Emphasis in original.)

Rings argue, however, that an assignment of an excess liability claim is not necessary in a garnishment proceeding because it is not a "direct action" and the garnishor stands, in the shoes of the insured. However, the same considerations which prohibit direct actions against insurance companies without assignment of the insured's rights apply equally to garnishment proceedings in similar circumstances. *See Cue v. Casualty Corp. of America*, 537 P.2d at 352.

It is generally held that an insurer owes no duty to an injured plaintiff to settle the claim for any amount. The duty to settle arises solely from the fiduciary relationship created by the insurance contract between the insured and his insurer. The plaintiff is a stranger to this relationship and enjoys no benefits from it. It is thus improper to allow garnishment proceedings against an insurer by the injured plaintiff for an alleged breach of the duty to settle. *Steen v. Aetna Casualty & Surety Co.*, 157 Colo. 99, 401 P.2d 254 (1965); *Francis v. Newton*, 43 S.E.2d 282, (Ga.App.1947); *Cook v. Superior Ins. Co.*, 476 S.W.2d 363 (Tex. App.1972); *Murray v. Mossman*, 56 Wash.2d 909, 355 P.2d 985, (1960). Arizona adopts the view that the duty to settle serves to protect the insured and *not the injured plaintiff*. Under this view, the injured plaintiff cannot claim to be a third party beneficiary to this protection. *Page v. Allstate Ins. Co.*, 126 Ariz. 258, 259, 614 P.2d 339, 340 (App.1980).

Moreover, in cases such as this, it is clear that the injured plaintiff receives no actual injury from the insurer's alleged exercise of bad faith in failing to settle. For instance, the Rings may ultimately benefit from the failure to settle their claim. Had State Farm settled with Rings in this case, they would have received, at best, only the policy limits of $50,000. However, because there was no settlement, Rings proceeded to trial and obtained a $1,321,500 judgment. How this $1,271,500 difference in Rings' favor constitutes an injury has not been explained.

We think the language of *Paul v. Kirkendall*, 6 Utah 2d 256, 311 P.2d 376 (1957) aptly sums up our position here:

As we understand the position of plaintiffs and the trial court, it is that there is presented an issue of fact with respect to teh alleged negligence and bad faith of the garnishee in failing to settle the claim of plaintiffs against the defendant. We further understand plaintiffs to contend that any unliquidated tort claim may be garnished by one holding a judgment against the person who claims a chose in action against one who might be sued by the judgment debtor.

Such a doctrine is shown to be more vulnerable by illustration.

A has a judgment against B. B is execution proof. C runs into B's car. B hasn't started any action against C but A has garnishment issued against C in the original action wherein judgment was entered against B. C answers that he *is not* indebted to B and also answers that he has not in his possession, in his charge or under his control any property, effects, goods, chattels, rights, credits or *choses in action* of defendant B. (Emphasis in original.)

A takes issue with C's answers and alleges that C has a chose in action of defendant B by reason of C's having negligently inflicted injury upon B, and asks that the issue of C's liability and the extent thereof be tried in the garnishment proceeding.

*We do not believe that the garnishment proceeding may become the means by which C can be required to defend against the claim of A that C is obligated to B without ever having a*

*chance to face B in determination of said issue.* (Emphasis added.)

*Kirkendall*, 311 P.2d at 379.

 In addition to the foregoing considerations prohibiting garnishment against an insurer without an assignment of the insured's rights, a persuasive argument against appellant's garnishment action arises from the distinction noted by the court in *Rutter v. King*, 57 Mich.App. 152, 226 N.W.2d 79, 86 (1974):

> Cases denying garnishment as a proper remedy do so because the action is found to be bottomed on tort and because the claim is unliquidated.

In Arizona, a claim against an insurer for bad faith is an intentional tort. *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981); *see also, Brown v. Superior Court In & For Maricopa County*, 137 Ariz. 327, 670 P.2d 725 (1983). Cases holding that an action for bad faith sounds in contract are thus distinguishable. *See e.g., Rutter v. King, supra; Gilley v. Farmers*, 207 Kan. 536, 485 P.2d 1284 (1971).[5]

 We hold that an injured plaintiff may not bring garnishment proceedings against an insurer for an alleged bad faith failure to settle without an assignment of the insured's rights. No such assignment exists here.

For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, P.J., and GRANT, J., concur.

---

**5.** Another potential factor weighing against Rings is that the insured (Taylor) entered into a settlement agreement releasing State Farm from all rights and claims under the policy. This would include the claim that State Farm acted in bad faith in failing to settle Rings' claim within the policy limits. State Farm does not contend that this release affects the company's obligation to pay the policy limits and concedes that the agreement was directed primarily at the bad faith claim. In the trial court, Rings offered to prove that Taylor's release of State Farm was a "fraudulent conveyance", but the trial court prevented them from doing so by entering the summary judgment which is at issue in this appeal. Whether or not the need to first establish a fraudulent conveyance before being able to proceed on the bad faith claim makes the underlying debt "contingent" under Arizona case law does not need to be addressed here. We only not in passing that Arizona requires a clear, ascertainable debt to the defendant which is not contingent on other events before garnishment is proper. *See Reeb v. Interchange Resources, Inc. of Phoenix*, 106 Ariz. 458, 478 P.2d 82 (1971); *O'Leary v. Superior Court of Gila County*, 104 Ariz. 308, 452 P.2d 101 (1969).