831 P.2d 380

**Stefan Robert FERGUSON and Robert Ferguson, Plaintiffs–Appellants,**

**v.**

**CASH, SULLIVAN AND CROSS INSURANCE AGENCY, INC., a corporation, Defendant–Appellee.**

**No. 1 CA–CV 89–253.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 29, 1991.

Reconsideration Denied Jan. 31, 1992.

Review Denied June 30, 1992.

Mitten, Goodwin & Raup by Donald F. Froeb and Charles M. Brewer, Ltd. by Charles M. Brewer, Stuart J. Reilly, Phoenix, for plaintiffs-appellants.

Jones, Skelton & Hochuli by William R. Jones, Jr. and Georgia A. Staton, Phoenix, for defendant-appellee.

## OPINION

TAYLOR, Presiding Judge.

This is an appeal of the trial court's entry of partial summary judgment in favor of appellee Cash, Sullivan and Cross Insurance Agency, Inc. (CSC) against appellants Stefan Robert Ferguson and Robert Ferguson.[1]

The trial court ruled Ferguson could not maintain a direct cause of action against CSC for its alleged negligence in failing to procure an umbrella liability insurance policy for its insured, David Wick, Inc. dba Oak Creek Ranch School (Wick), sufficient to satisfy an $8,400,000.00 judgment award against Wick. On appeal, we consider, as a matter of first impression in Arizona, whether an injured third party may bring a direct action against the tortfeasor's insurance agent for negligent failure to advise its insured of the possible need for a larger liability insurance policy. We conclude that, under the facts of this case, a third party may not maintain such an action. Accordingly, we affirm the trial court's entry of partial summary judgment.

---

1. Stefan Robert Ferguson, a minor, and his father Robert Ferguson, jointly brought this action. For clarity, both will be referred to herein as Ferguson.

## FACTS

In 1980, Stefan Ferguson was severely injured while attending a boarding school known as Oak Creek Ranch School. Ferguson subsequently filed lawsuits in federal district court against both Wick, the owner of the Oak Creek Ranch School, and the United States, and in Maricopa County Superior Court against the school. On December 14, 1984, the United States, Ferguson, Wick, and Home Insurance Company, Wick's insurer, entered into a settlement agreement. The settlement agreement provided that (1) Wick's insurer would pay to Ferguson the policy limits of $500,-000.00,[2] Wick would immediately pay $100,-000.00 and pay an additional $150,000.00 as evidenced by a promissory note secured by a deed of trust, and the United States would pay $175,000.00; (2) the federal lawsuit would be dismissed; (3) the state lawsuit against Wick would continue, although Ferguson agreed not to execute against Wick for the excess of any judgment awarded over the amounts due from Wick as provided in the agreement; and (4) Ferguson would initiate litigation against CSC, as Wick's insurance agent, for CSC's alleged failure to recommend that Wick obtain an umbrella insurance policy. The settlement agreement also provided that Ferguson would reimburse Wick and the United States from any amounts recovered from CSC for payments made pursuant to the agreement. The settlement agreement did not contain an express assignment to Ferguson of Wick's rights against CSC. Thereafter, the trial in the state court proceeded. Following a brief trial, an $8,400,-000.00 judgment was entered against Wick.

Subsequently, Ferguson filed a complaint against CSC seeking to recover $7,900,-000.00. This represented the difference between the amount of Ferguson's judgment against Wick and the amount paid to Ferguson by Wick's insurer pursuant to the settlement agreement. The complaint alleged (1) CSC was negligent and breached its contractual duty by failing to recommend to Wick that he obtain an umbrella liability policy, and (2) as a direct and proximate result of CSC's alleged negligence and breach of contract, Ferguson was damaged. After its motion to dismiss was denied, CSC filed a motion for partial summary judgment. CSC argued that Ferguson could not maintain a direct cause of action against CSC but only had a derivative claim limited to whatever damages Wick, as the insured, sustained. According to CSC, this was $250,000.00, the amount required to be paid by Wick pursuant to the settlement agreement. The court granted CSC's motion and denied Ferguson's motion for a new trial. This appeal followed.

## SUFFICIENCY OF COMPLAINT

CSC argues the grant of partial summary judgment in its favor was proper because Ferguson's complaint alleged a derivative, not a direct, cause of action against CSC. CSC also contends that it was Ferguson's intent to take an assignment of any cause of action Wick had against CSC, as evidenced by the settlement agreement with Wick, Home Insurance Company, and the United States. In response, Ferguson argues that the partial summary judgment was not properly before the trial court and that he intended to maintain a direct cause of action against CSC. In support of his position, Ferguson argues that the settlement agreement makes no mention of any assignment of rights.

On its face, Ferguson's complaint does not specifically allege that CSC breached a contractual relationship with, or a duty of care directly owed to, Ferguson. The complaint, however, does allege that because of CSC's negligence and breach of its contractual duty to Wick, Wick did not have insurance sufficient to cover Ferguson's claim. The complaint further alleges that as a

2. At the time of Stefan Ferguson's accident, Wick had purchased through CSC a Home Insurance Company liability policy providing coverage of $500,000.00. No umbrella policy was in effect during the year Ferguson's accident occurred. A resolution of the legal issues before us does not require a determination of whether CSC recommended an umbrella policy the year of the accident.

**384**

direct result of CSC's negligence Ferguson was damaged.

■ We conclude from the complaint as a whole that Ferguson intended to assert a direct cause of action against CSC. First, we note that the complaint alleged Ferguson was directly damaged by CSC's negligent actions and that no assignment of rights was mentioned. Second, CSC acknowledged that Ferguson was asserting a direct action against CSC in CSC's reply to Ferguson's response to its motion to dismiss. Finally, Ferguson's direct cause of action against CSC was clearly raised in Ferguson's responses to CSC's motion to dismiss and subsequent motion for partial summary judgment. This pleading provided CSC with adequate notice of this cause of action. *See Arizona Dep't of Revenue v. Transamerica Title Ins. Co.*, 124 Ariz. 417, 423, 604 P.2d 1128, 1134 (1979).

We conclude that the issue whether Ferguson could maintain a direct cause of action against CSC was properly before the trial court for resolution.

### DISCUSSION

*Negligence*

■ Arizona does not require privity to maintain a negligence action in tort. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984). To maintain a negligence action, the plaintiff must show that the defendant owed a duty to him, the duty was breached, the breach proximately caused an injury, and the injury resulted in actual damages. *Id.* (citing *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983)). Proof of each of these four elements must be established. *Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983) (citing William L. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971)).

■ *Duty.* The Arizona Supreme Court has held that in order to maintain a negligence action there must be a duty or obligation recognized by law. *Hamman v. County of Maricopa*, 161 Ariz. 58, 61, 775 P.2d 1122, 1125 (1989). When a duty exists, the defendant must conform to a particular standard of conduct in order to protect others from unreasonable risks of harm. *Id.* (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983)). The danger reasonably perceived defines the duty owed. *Id.* (citing *Chavez v. Tolleson Elementary Sch. Dist.*, 122 Ariz. 472, 476, 595 P.2d 1017, 1021 (App.1979)). The issue of duty is usually one for the court as a matter of law. *Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983).

Ferguson argues that it was the insurance agent's duty to adequately insure Wick in order that an injured third party would be able to recover the full extent of any damages sustained. Ferguson urges that foreseeability establishes a professional's duty to a third party and thus CSC owed Ferguson a duty. In support of this argument, Ferguson relies heavily upon *Donnelly Construction Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984).

In *Donnelly*, a contractor was hired to follow plans and specifications prepared by the architect. In a negligence action against the architect, the contractor alleged that the architect's plans and specifications were in error and that by following these plans, the contractor incurred increased costs. The complaint claimed that the contractor's injury was a direct result of the allegedly incorrect plans. In holding that the architect could be held liable under the facts as pled, the supreme court found a duty owed to plaintiff and both a foreseeable risk and a foreseeable victim.

Several features of this case distinguish it from *Donnelly*. In *Donnelly*, the architect prepared plans and specifications with the almost certain expectation they would be relied upon by contractors in the preparation of bids and in construction. Here, there is no showing that Ferguson's conduct was dictated by a reliance upon the insurance contract between CSC and Wick. Unlike the facts in *Donnelly*, nothing done by CSC increased the risk of harm to Ferguson or contributed to his serious injuries. The most that can be said for the conse-

quences of CSC's alleged negligence is that it may have precluded recovery on the judgment. To foresee such a consequence, CSC would have had to foresee the accident, then foresee that Wick's liability would exceed $500,000.00, and then foresee that no other resources would be available to satisfy the judgment. Even assuming the existence of a duty owed by CSC to Ferguson, the element of reliance and the strong foreseeability of risk and of a victim which were present in *Donnelly* are lacking here.

■ The courts have recognized that a duty owed to a plaintiff may arise out of a relationship between the defendant and a third party when the defendant's negligence causes injury to the third party. *Donnelly* and other cases have held that professionals may, under appropriate circumstances, be liable for injuries to third parties. *Donnelly*, 139 Ariz. 184, 677 P.2d 1292; *Hamman*, 161 Ariz. 58, 775 P.2d 1122. Such cases have usually held that the particular professional occupied a special status or relationship with the actor or the injured third party. The test is whether the professional had a duty to protect foreseeable third parties from harm. *Hamman*, 161 Ariz. at 63–64, 775 P.2d at 1127–28.

In *Hamman*, the Arizona Supreme Court held that a psychiatrist had a duty to protect foreseeable possible victims from his patient's known violent behavior. *Id.* In *Ontiveros v. Borak*, our supreme court held that a tavern owner may be held liable for a third party's injuries because of negligently furnishing alcohol to a customer. 136 Ariz. 500, 667 P.2d 200 (1983). The rulings in *Ontiveros* and *Hamman* were based upon the existence of a special status or relationship wherein it was possible for the defendant to foresee and prevent the original injury. *Hamman*, 161 Ariz. at 64, 775 P.2d at 1128; *Ontiveros*, 136 Ariz. at 506, 667 P.2d at 206. In both *Hamman* and *Ontiveros*, the supreme court recognized that those who, because of their special relationship or status are in a position to foresee harm and to control it, may be required to share with the primary wrong-

doer the consequences of injury to others. *Hamman*, 161 Ariz. 58, 775 P.2d 1122; *Ontiveros*, 136 Ariz. at 507, 667 P.2d at 211. In this case, CSC, as Wick's insurance agent, had no control over Wick's operation of his school programs so as to ensure that he conducted them in a manner consistent with the safety of his young charges.

Ferguson also relies upon *Fickett v. Superior Court*, 27 Ariz.App. 793, 558 P.2d 988 (1976). In *Fickett*, this court held that an attorney who undertakes to represent the guardian of an incompetent also assumes a relationship with the ward. *Id.* at 795, 558 P.2d at 990. If he fails to act in the best interest of the ward, he may be liable for that failure. *Id.* A suit may be brought against the attorney on behalf of the guardian because of the special relationship between the guardian and the ward. *Id.* at 795–96, 558 P.2d at 990–91.

■ In this case, however, there are no facts involving the dealings between CSC and Wick which support a special relationship theory and thus would draw Ferguson within some protective circle. The record reflects only a normal business transaction between CSC and Wick with no assumed special duties. While recognizing that potential claimants are entities that may be considered in negotiations between an agent and the insured, we believe the mere existence of those entities does not generate a special relationship with the agent.

In *Ring v. State Farm Mutual Automobile Insurance Co.*, 147 Ariz. 32, 708 P.2d 457 (App.1985), this court denied plaintiff a direct action via garnishment proceedings against an insurer. Plaintiff sought excess liability, alleging bad faith failure to settle plaintiff's claim against the insured. In denying plaintiff's claim, this court pointed out that (1) there was no injury to plaintiff from the insured's alleged exercise of bad faith, and (2) the injured plaintiff was a stranger to the relationship existing between the insured and the insurer and enjoyed no benefits from it.

Similarly, in *Page v. Allstate Insurance Co.*, 126 Ariz. 258, 614 P.2d 339 (App.1980), the court, in affirming summary judgment for an insurer on claims of negligence and

bad faith, found no duty owed to an injured third party which would require an insurer to settle a claim within policy limits.

Just as the courts in *Ring* and *Page* stated that an insured owes no duty to an injured plaintiff to settle the claim for any particular amount, so we conclude that an agent owes no duty to a third party to recommend insurance to the insured in a particular amount where no insurance is required by law. As a matter of law, we find no special relationship existed and thus no duty was owed to Ferguson by CSC.

If no duty exists, the defendant is not liable for a plaintiff's loss, even though the defendant may have acted unreasonably in light of the foreseeable risk.

In Arizona the rule is as follows:

The question of duty is decided by the court. The question is whether the relationship of the parties was such that the Defendant was under an obligation to use some care to avoid or prevent injury to the Plaintiff. If the answer is no, the Defendant is not liable even though he may have acted negligently in light of foreseeable risks.

*Alhambra Sch. Dist. v. Superior Court*, 161 Ariz. 568, 570, 780 P.2d 401, 403 (1989) (citing *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985)).

Because we find no duty owed to Ferguson, we find CSC is not liable to Ferguson for any deficit of funds which limit full recovery of damages awarded by the trial court. Although we believe our resolution of the duty issue is dispositive of this case, we briefly address the additional issues raised by appellants.

*Causation.* Even if a duty were found, the lack of causation between CSC's actions and Ferguson's injuries is fatal to Ferguson's cause of action. To establish a prima facie case of negligence, a plaintiff must show that the defendant proximately caused the injury. *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 498, 616 P.2d 955, 958 (App.1980). Proximate cause is found where, without any intervening cause and without the defendant's act, the injury would not have occurred. *Id.* Although proximate cause is normally for the jury, "the determination of facts upon which there could be no reasonable difference of opinion is in the hands of the court." *Fedie v. Travelodge Int'l*, 162 Ariz. 263, 266, 782 P.2d 739, 742 (1989) (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 45, at 319–20 (5th ed. 1984)).

Ferguson claims CSC's failure to advise Wick of the potential need for an umbrella insurance policy was the proximate cause of Ferguson's loss. We disagree. Ferguson's physical injuries would have occurred regardless of the amount of insurance coverage Wick obtained from CSC. The only result of CSC's alleged failure to advise Wick of the umbrella policy is to limit the sources of Ferguson's recovery. Just as we know of no authority that would grant Ferguson a cause of action against Wick for failure to have resources, including insurance, sufficient to satisfy the judgment, we know of no authority that creates a third party cause of action against an insurer for failure to recommend coverage in a particular amount. This court has never held that an insufficient source of funds for recovery of damages is in itself an actionable injury. We decline to enlarge the definition of injury as Ferguson would have us do today.

Ferguson also argues that CSC's failure to advise its insured of the need for an umbrella policy was the cause-in-fact of his injuries. We do not find that "but for" CSC's failure to advise and sell an umbrella policy to Wick, the accident and injuries to Ferguson would not have occurred. *See Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983).

### Reliance

Both parties cite us to *Flattery v. Gregory*, 397 Mass. 143, 489 N.E.2d 1257 (1986) on the issue of whether a third party may bring a direct action against an insur-

387

ance agent.[3] In *Flattery*, the Massachusetts Supreme Court reasoned that the injured plaintiff did not use the public highways in reliance that a motor vehicle would be insured for more than the coverage required by statute. *Id.* To recover above the policy limits under a tort claim against the insurance company, the plaintiff must rightfully and foreseeably expect the higher optional insurance to be in effect and to have relied upon it.[4] *Id.* We find this reasoning persuasive. Without such reliance, the theory relied upon in *Flattery* is inapposite. There is no evidence in this case to show Ferguson attended Wick's school in reliance upon Wick carrying a substantial insurance policy.

Ferguson cites *Darner Motor Sales v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984) to argue that public policy should require an insurance agency be held responsible for injuries caused by its negligence. In *Darner*, the court held that an insurance agent could be found negligent if he failed to provide the insurance coverage he had led his insured to believe was in effect. *Id.* In the present case, the insurer had provided the insurance coverage to the limits agreed upon by the insured. CSC made no misrepresentations about the insurance policy to Wick upon which Wick or Ferguson relied.

This court has previously held that an insurer's duty is to its insured and not to an injured third party. *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457 (App.1985); *see also Freeman v. Schmidt Real Estate and Ins.*, 755 F.2d 135 (1985) (Iowa law does not recognize a duty from insurance agents to potential injured third parties sufficient to give a direct cause of action against insurers for negligence in failing to procure insurance in a higher amount). We see no reason the rule followed in *Ring* should not be extended to an insurance agent advising the insured on optional insurance coverage.

**3.** Ferguson also cites *Eschle v. Eastern Freight Ways*, 128 N.J.Super. 299, 319 A.2d 786 (1974) and *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965). In both of these cases, the agent failed to procure the requested insurance.

CONCLUSION

For the foregoing reasons, we conclude that Ferguson did not have a direct cause of action against CSC for its alleged negligence. The order of the trial court granting CSC's Motion for Partial Summary Judgment is affirmed.

GERBER and LANKFORD, JJ., concur.

**4.** The cases cited by Ferguson deal, for the most part, with automobile accidents where state statutes existed requiring a minimum amount of insurance. No such statutory minimum is at issue in this case.