950 P.2d 159

**David LUCE and Joyce Luce,
Plaintiffs–Appellants,**

v.

**STATE TITLE AGENCY, INC.,
Defendant–Appellee.**

No. 1 CA–CV 96–0327.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 11, 1997.

Gurtler, Kelley & Moyer by Kenneth E. Moyer, Bullhead City, for Appellant.

Bruno, Brooks & Goldberg, P.C. by Jeffrey A. Goldberg, Kingman, for Appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gary L. Birnbaum and Michael R.

Scheurich, Phoenix, for Amicus Curiae Land Title Association of Arizona.

## OPINION

NOYES, Judge.

David and Joyce Luce ("Appellants") appeal the trial court's grant of summary judgment to State Title Agency, Inc. ("State Title"). Appellants claim that State Title owed them a duty of reasonable care and skill when it gratuitously recorded a deed of trust for a third party. The trial court found that State Title had no duty to Appellants. We affirm.

### I.

In January 1988 Appellants entered into a partnership ("the Partnership") with Daniel O'Connor and a company that he wholly owned. O'Connor and his company were general partners and Appellants were limited partners. In return for seventy percent interest in the Partnership, Appellants transferred to it some real property ("the Property") located in Mohave County.

As necessary to discuss here, the Partnership Agreement provided that the general partners had exclusive control over the business of the Partnership, and they had the right to dispose of Partnership property or any interest in it, subject to applicable rights of the limited partners. The rights of the limited partners in this regard were to approve or disapprove "any sale, exchange, refinance or pledge of substantially all of the assets of the Partnership."

The Property that Appellants transferred to the Partnership amounted to "substantially all of the assets of the Partnership" and was therefore not to be disposed of without approval of Appellants. In April 1991, however, without seeking Appellants' approval, O'Connor executed a deed of trust that conveyed the Property to Continental Conveyance Corporation as trustee for the benefit of Pacific Court Holdings. The deed of trust secured a note, also executed by O'Connor, which obligated the Partnership to repay Pacific Court Holdings for a loan in the principal amount of $204,545.00. The record contains no evidence that Pacific Court Holdings ever loaned any money to the Partnership.

In June 1991 Pacific Court Holdings and Continental Conveyance Corporation sent a letter to State Title requesting that it open an order for a lender's title policy to insure Pacific Court's lien on the Property. The letter also requested that State Title record the deed of trust, which had been prepared and executed in California. In response, State Title prepared a preliminary title report, provided a lender's policy of title insurance through Fidelity National Title Insurance Company, and gratuitously recorded the deed of trust.

State Title had neither contract with nor contact with Appellants, but its answering brief acknowledges that it "reviewed the Partnership Agreement while processing an order for a lender's policy of title insurance to Pacific Court." We thus infer that State Title knew all provisions of the Partnership Agreement.

On October 13, 1993, after discovering what O'Connor had done to the Property, Appellants filed a Complaint to Quiet Title which, as amended and as relevant to this appeal, charged State Title with negligence, breach of contract, and breach of a fiduciary duty. State Title filed a motion for summary judgment, and the trial court granted it, reasoning as follows:

> It appears that State Title recorded existing documents (Deed of Trust) as a courtesy to Continental Conveyance. No escrow existed for this transaction and State Title acted solely on behalf of the lender. There was no obligation to Plaintiff.
>
> IT IS, THEREFORE, ORDERED granting summary judgment as to State Title.

Appellants timely appealed from this summary judgment, and we have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

### II.

The issue is whether State Title had a duty to Appellants based on either State Title's

review of the Partnership Agreement or its gratuitous recording of the deed of trust.

A tort plaintiff must prove that defendant owed a duty to plaintiff, that defendant breached the duty, that the breach caused injury to plaintiff, and that the injury resulted in actual damages. *Ferguson v. Cash, Sullivan & Cross Ins. Agency, Inc.,* 171 Ariz. 381, 384, 831 P.2d 380, 383 (App.1991) (citing *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984)). If no duty exists, defendant "is not liable even though he may have acted negligently in light of the foreseeable risks." *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

■ Whether a duty exists is a question of law for the court. *Id.* at 354, 706 P.2d at 366. Concluding that State Title owed "no obligation" to Appellants, the trial court granted summary judgment to State Title. In reviewing a grant of summary judgment, this court "views the evidence in the light most favorable to the party opposing the motion and all favorable inferences fairly arising from the evidence must be given to the opposing party." *Ancell v. Union Station Assocs.,* 166 Ariz. 457, 459, 803 P.2d 450, 452 (App.1990) (citations omitted).

### A. Duty as a Professional

■ Appellants argue that State Title, as a professional, had a duty to protect them from foreseeable harm and that it breached this duty by negligently recording the deed of trust. Generally, a title company's duties are to those with whom it has a contractual relationship. *See Engler v. Sainer,* 4 Ariz. App. 86, 88, 417 P.2d 720, 722 (1966); *see also Phoenix Title & Trust Co. v. Continental Oil Co.,* 43 Ariz. 219, 228, 29 P.2d 1065, 1068 (1934) (holding that "[an] abstractor . . . is not liable to persons who may be misled to their damage by reason of his negligence, unless there is some privity of contract between them"). Generally, the scope of duty is limited by the terms of the contract. *See Malta v. Phoenix Title & Trust Co.,* 76 Ariz. 116, 120, 259 P.2d 554, 557 (1953).

■ The duties of title companies have, to a limited extent, been extended beyond the terms of their contracts. *Berry v. McLeod,* 124 Ariz. 346, 352, 604 P.2d 610, 616 (1979) (imposing a duty to disclose to parties to the escrow when a title company has knowledge that a fraud is being committed); *Burkons v. Ticor Title Ins. Co. of Cal.,* 168 Ariz. 345, 352–53, 813 P.2d 710, 717–18 (1991) (imposing a duty to disclose when circumstances would lead a reasonable escrow agent to perceive fraud, as well as a duty to be cognizant not only of the escrow instructions but also of the documents placed in escrow and to seek clarification of any ambiguity from the principals). *See also* Tibor Nagy, Jr., Note, *Escrowees' Duty to Disclose Fraud: An Expansion of the Limited Agency Doctrine,* 22 Ariz. L.Rev. 1146 (1980). In those cases, a relevant contractual relationship existed. In the present case, however, State Title had no contractual relationship to anyone regarding the deed of trust it gratuitously recorded.

Appellants try to come within the protection afforded by cases holding that professionals may be liable to third persons under certain circumstances despite lack of privity of contract. *See Donnelly,* 139 Ariz. at 188, 677 P.2d at 1296 ("design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services"); *see also Hamman v. County of Maricopa,* 161 Ariz. 58, 64, 775 P.2d 1122, 1128 (1989) (holding that a psychiatrist has a duty to protect foreseeable victims from a patient's violent behavior). Some cases have imposed such a duty on title companies. *See Mur–Ray Management Corp. v. Founders Title Co.,* 169 Ariz. 417, 422–23, 819 P.2d 1003, 1008–09 (App.1991) (imposing a duty of reasonable care regarding title company's representations to third persons); *see also Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 491–92, 484 P.2d 639, 645–46 (1971) (imposing a duty to third persons who relied on the title company's statements). We distinguish those cases because the duty in those cases arose from the defendants' contractual relationship with someone. In this case, State Title had no contractual relationship with anyone regarding recordation of the deed of trust.

■ Even if a contractual relationship did exist regarding the recordation, the question still comes down to "whether the professional had a duty to protect foreseeable third parties from harm." *Ferguson*, 171 Ariz. at 385, 831 P.2d at 384. In *Ferguson*, a student was injured at a boarding school. *Id.* at 383, 831 P.2d at 382. He sued the school owner's insurance agent, alleging that the agent was negligent for not recommending that the school owner carry an umbrella policy. *Id.* In deciding whether the agent owed a duty to Ferguson, the court stated that a duty may arise out of a special status or relationship, such that the defendant may "foresee and prevent" the plaintiff's injury. *Id.* at 385, 831 P.2d at 384 (citing *Hamman*, 161 Ariz. at 64, 775 P.2d at 1128, and *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983)). The court further explained, "In both *Hamman* and *Ontiveros*, the supreme court recognized that those who, because of their special relationship or status are in a position to foresee harm and to control it, may be required to share with the primary wrongdoer the consequences of injury to others." *Id.* (citations omitted). In *Ferguson*, the court found that because the agent had no control over the owner's operation of the school, no special relationship existed and the agent owed no duty to the plaintiff. *Id.* Similarly, State Title had no control over the general partner's operation of the Partnership, and no special status or relationship regarding either the general partners or the Appellants.

■ Appellants' best support for a "special status or relationship" claim is *Seeley v. Seymour*, 190 Cal.App.3d 844, 237 Cal.Rptr. 282 (1987). In *Seeley*, the California Court of Appeal held that a title insurance company could be liable for negligently recording an invalid document. *Id.*, 237 Cal.Rptr. at 291–92. However, the facts in *Seeley* differ significantly from those here, and warrant a different result. Unlike the deed of trust here, the recorded instrument in *Seeley* was void on its face. *Id.* at 288. Additionally, the *Seeley* title company had a contract with the county recorder's office that required the title company to review documents to ensure their validity prior to recording. *Id.* at 291. No such contract exists in this case.

## B. Duty Under the Restatement (Second) of Torts

■ Appellants argue that State Title incurred a duty to them when it reviewed the Partnership Agreement. Appellants cite the Restatement (Second) of Torts sections 323 and 324A (1965) and *Lloyd v. State Farm Mutual Automobile Insurance Co.*, 176 Ariz. 247, 860 P.2d 1300 (App.1992), to support their position.

Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

This court determined in *Lloyd* that, "When a person voluntarily undertakes an act, even when there is no legal duty to do so, that person must perform the assumed duty with due care and is liable for any lack of due care in performing it." 176 Ariz. at 250, 860 P.2d at 1303 (citing Restatement (Second) of Torts § 323 (1965)). Although the Restatement speaks of "physical harm," the *Lloyd* court stated that a "volunteer may

be liable for economic harm as well." *Id.* In *Lloyd,* section 323 applied because defendant undertook an action on behalf of plaintiff. *Id.* at 249, 860 P.2d at 1302. Because State Title did not undertake an action on behalf of Appellants, only section 324 arguably applies here.

■ Assuming without deciding that section 324 can apply in the absence of physical harm, the facts do not show that State Title undertook "to render services to [Pacific Court] which [State Title] should recognize as necessary for the protection of [Appellants]." We hold that Section 324 is inapplicable.

The grant of summary judgment to State Title is affirmed.

EHRLICH, J., concurring.

GERBER, Judge, dissenting.

I respectfully dissent because, in my opinion, under the circumstances of this case, State Title owed a duty of care to Appellants. As the majority notes, Arizona courts have held that a professional may have a duty to protect foreseeable third parties from harm, and our Supreme Court has advocated a broad view of the class of risks and class of victims that are foreseeable. *See Donnelly Constr. Co.,* 139 Ariz. at 187, 677 P.2d at 1295.

The majority sees this case like *Ferguson,* 171 Ariz. at 385, 831 P.2d at 384, in which we held that an insurance agent who failed to recommend an umbrella liability policy to the owner of a school did not owe a duty to a student injured at the school. It is more analogous, however, to *Burkons,* 168 Ariz. at 347–48, 354, 813 P.2d at 712–13, 719, where the escrow agent in a real estate sales transaction knew or had reason to know of fraud committed by the buyer. There our Supreme Court held that, while an escrow agent is not required to actively search for fraud, "when the agent is aware of facts and circumstances that a reasonable escrow agent would perceive 'as evidence of fraud' there is duty to disclose." Although that escrow agent's duty to disclose arose from a contractual relationship, *Burkons* resembles Appellants' case because of circumstances which "raised the flag of suspicion quite high."

In *Seeley v. Seymour,* 190 Cal.App.3d 844, 237 Cal.Rptr. 282 (1987), the California Court of Appeal held a title insurance company liable to a landowner for transmitting an invalid memorandum of lease to the county recorder's office as a client courtesy. The court found a duty because the memorandum was intended to affect the owner, it foreseeably would impair his ability to sell the property, and the injury was clear and closely related to the recording of the memorandum. The court noted that the recording function has taken on something of a public character, implying that public policy favors the imposition of liability.

Similarly here, the recording of the deed of trust imposed a record lien against the partnership's property and foreseeably affected the partnership's and Appellants' property interests. Because title companies participate in the vast majority of real estate transactions in this state, they are chargeable with a public trust regarding such property transactions. State Title's frank admission that recordings such as this deed of trust are done as "a service to the public by title companies" recognizes this charge.

The majority attempts to distinguish *Seeley* because the recorded instrument in *Seeley* was void on its face and because the *Seeley* title company was required by contract to review documents to ensure their validity. However, the fact that the recorded deed of trust was facially valid only increases the likelihood that its recording would eventually harm Appellants. The *Seeley* title company's contract to review documents for recording compliance is irrelevant here because there is no argument that the deed of trust fell below standards for recordability.

Given these factors, I would reverse.