**Armando VALLES, et al., Plaintiffs,**

**v.**

**PIMA COUNTY, et al., Defendants.**

**No. CV 08–00009–TUC–FRZ (JCG).**

United States District Court,
D. Arizona.

July 31, 2009.

938

Joane E. Hallinan, Law Offices of Joane E. Hallinan, Norris L. Ganson, Law Office of Norris L. Ganson, Tucson, AZ, for Plaintiffs.

Thomas Weaver, Jr., Lesley Maura Lukach, Neal Allen Eckel, Durazzo & Eckel PC, Tucson, AZ, for Defendants.

## ORDER

FRANK R. ZAPATA, District Judge.

■ Pending before the Court is a Report and Recommendation (Doc. # 173) issued by United States Magistrate Judge Jennifer C. Guerin whereby she recommends granting three motions to dismiss (Doc. # 's 149, 137, 151) for lack of jurisdiction.[1] The Court has reviewed the parties' objections and finds that they do not undermine the sound factual and legal analysis employed by Magistrate Judge Guerin in reaching the correct conclusion that there is no supplemental jurisdiction in this case. As such, the Court need not repeat the detailed factual and legal analysis discussed in the Report and Recommendation. The Court only briefly notes that this case stems. from a failed subdivision whereby the purchasers of lots in the subdivision failed to receive the full value of their property as the defunct subdivision developer did not complete necessary improvements to the land at issue. In their Third Amended Complaint, Plaintiffs allege only state law claims for negligence and misrepresentation against Defendants Parkhurst, Sack and Long Realty, and Mason. Plaintiff argues that the Court should assert supplemental jurisdiction over the state law negligence and misrepresentation claims as they arise from a common nucleus of operative facts with the federal claims asserted against the Pima County defendant. However, as the Report and Recommendation discussed in detail, the Fifth Amendment Takings claim and Fourteenth Amendment Due Process claim asserted against Pima County involve substantially different factual and legal foundations compared to the state law negligence and misrepresentation claims. As such, the Court finds that supplemental jurisdiction is not appropriate in this case as discussed in the Report and Recommendation and therefore rejects Plaintiffs' objections; thus, the Report and Recommendation properly concludes that Defendants

[1]. The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739 (7th Cir.1999); *see also Conley v. Crabtree,* 14 F.Supp.2d 1203, 1204 (D.Or.1998).

Parkhurst, Sack and Long Realty, and Mason should be dismissed without prejudice for lack of jurisdiction.

■ While on the topic of supplemental jurisdiction, the Court notes that Magistrate Judge Guerin issued a separate Report and Recommendation (Doc. # 172) as to Defendants Hosack and Desert Vista Engineering whereby she recommends granting Hosack's and Desert Vista Engineering's motion for summary judgment on the merits based on the economic loss rule. Additionally, the same Report and Recommendation correctly finds that Hosack and Desert Vista Engineering are subject to dismissal as the Court lacks supplemental jurisdiction over these particular Defendants. *See* Report and Recommendation at 10, n. 5 ("Although Defendants Hosack and Desert Vista did not challenge the Court's subject matter jurisdiction, the Court may consider the issue of subject matter jurisdiction at any time and must dismiss an action if it determines that subject matter jurisdiction is lacking. *See* Rule 12(h)(3), Fed.R.Civ.P. For the reasons stated in this Report and Recommendation recommending that the District Court grant the motions to dismiss filed by Defendants Parkhurst, Mason, Sack, and Long Realty (Doc. No. 17[3] ), Defendants are also entitled to dismissal of Plaintiffs' negligence claims because the Court lacks supplemental jurisdiction over the claim."). Similar to Defendants Parkhurst, Sack and Long Realty, and Mason, the only claim asserted against Hosack and Desert Vista Engineering is a state law claim for negligence. The Fifth Amendment Takings claim and Fourteenth Amendment Due Process claim asserted against Pima County involve substantially different factual and legal foundations compared to the state law negligence claims asserted against Hosack and Desert Vista Engineering; the Court finds that it lacks jurisdiction over the claims asserted against Hosack and Desert Vista Engineering and these parties are therefore dismissed without prejudice.

The Court notes that Defendants Parkhurst and Mason filed very brief objections whereby they summarily argue that they should be dismissed with prejudice based on the merits of their claims pertaining to the economic loss rule and statutes of limitation. However, as the Court has found that supplemental jurisdiction is lacking as to these specific defendants, their objections pertaining to the merits of the underlying case are denied.[2]

Accordingly, IT IS HEREBY ORDERED as follows:

(1) The Report and Recommendation as to Defendants Parkhurst, Mason, Sack, and Long Realty (Doc. # 173) is **accepted and adopted.** The Defendants' motions to dismiss (Doc. # 's 149, 137, 151) are **granted.** Defendants Parkhurst, Sack, Long Realty, and Mason are **dismissed from this action without prejudice.** The **Clerk of the Court shall enter judgment accordingly.**

(2) The Report and Recommendation (Doc. # 172) as to Defendants Hosack and Desert Vista Engineering is **accepted and adopted to the extent that the Report and Recommendation finds that supplemental jurisdiction is lacking as to Defendants Hosack and Desert Vista Engineering.** As such, Defendants Hosack and Desert Vista Engineering are **dismissed from this action without prejudice.** The **Clerk of the Court shall enter judgment accordingly.** The motion for summary judgment (Doc. # 152) filed by

---

**2.** As to the remaining issues that were not objected to by the parties, the Court has reviewed the record and concludes that Magistrate Judge Guerin's recommendations are not clearly erroneous.

Defendants Hosack and Desert Vista Engineering is denied as moot as they have been dismissed on the separate ground that the Court lacks jurisdiction over the claims asserted against these Defendants.

(3) As pretrial proceedings still remain in this case, this case is hereby referred back to Magistrate Judge Jennifer C. Guerin for all pretrial proceedings and report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1), Fed. R.Civ.P. 72, and LRCiv 72.1, 72.2, and 72.3 of Rules of Practice of the United States District Court for the District of Arizona.

**All future filings in this case shall be designated:**

**CV 08–9–TUC–FRZ (JCG)**

## AMENDED REPORT & RECOMMENDATION RE: MOTIONS TO DISMISS BY DEFENDANTS PARKHURST, SACK AND LONG REALTY, AND MASON

JENNIFER C. GUERIN, United States Magistrate Judge.

Three motions are pending before the Court. On November 26, 2008, Defendant Parkhurst Construction, LLC ("Parkhurst") filed a Motion to Dismiss. (Doc. No. 149.) Plaintiffs filed a response on December 10, 2008 (Doc. No. 157) and Defendant timely replied. (Doc. No. 161.)

Defendants Richard A. Sack ("Sack") and Roy H. Long Realty Company, Inc. ("Long Realty") filed a Motion to Dismiss on November 10, 2008. (Doc. No. 137.) Plaintiffs filed a response to the Motion on November 24, 2008 (Doc. No. 147) and Defendants timely replied. (Doc. No. 159.)

Finally, on November 28, 2008, Defendant David A. Mason ("Mason") filed a Motion to Dismiss. (Doc. No. 151.) Plaintiffs filed a response on December 12, 2008 (Doc. No. 160) and supplemented their response on December 18, 2008. (Doc. No. 162.) Defendant Mason timely replied. (Doc. No. 165.)

Pursuant to the Rules of Practice in this Court, these matters were assigned to Magistrate Judge Guerin for a report and recommendation. (Doc. No. 37.) After review, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting Defendants' Motions.

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action against fourteen Defendants on January 3, 2008. (Doc. No. 1.) Plaintiffs were granted leave to amend their complaint and filed their First Amended Complaint on March 11, 2008. (Doc. No. 33.) Numerous defendants filed motions to dismiss Plaintiffs' First Amended Complaint. While those motions were pending, the Court granted Plaintiffs leave to file their Second Amended Complaint, which Plaintiffs filed on August 11, 2008. (Doc. Nos. 126, 127.) On August 29, 2008, 2008 WL 4056996, the Court dismissed two Defendants—West Speedway Partners, LLC and The Villas at Hacienda del Sol, Inc. (Doc. No. 130.) On September 8, 2008, the Court dismissed the remaining motions to dismiss as moot in light of the filing of Plaintiffs' Second Amended Complaint. (Doc. No. 133.) The Court further noted that "this case may be streamlined by allowing Plaintiffs to file a Third Amended Complaint." (*Id.*) Plaintiffs filed their Third Amended Complaint on October 24, 2008. (Doc. No. 136.)

Plaintiffs' Third Amended Complaint alleges claims against Defendants Pima County, Mason, Thomas E. Hosack, P.E. ("Hosack"), Desert Vista Engineering, LLC ("Desert Vista"), Sack and Long Realty. (Doc. No. 136.) Motions to dismiss Plaintiffs' Third Amended Complaint have been filed by Defendants Parkhurst, Ma-

son, Sack and Long Realty. (Doc. Nos. 137, 149 and 151.) Defendants Hosack and Desert Vista have filed a Motion for Summary Judgment. (Doc. No. 152.) Defendant Pima County has answered the Third Amended Complaint. (Doc. No. 150.)[1]

## FACTS RELATING TO DEFENDANT PARKHURST

According to Plaintiffs' Third Amended Complaint, Defendant Parkhurst is an Arizona Limited Liability Company registered by the Registrar of Contractors as a specialty residential contractor for excavating, grading and oil surfacing. (Doc. No. 136, ¶¶ 16, 109.) Parkhurst was engaged in the construction of subdivision improvements for residential properties purchased by Plaintiffs in a subdivision named The Enclave at Gates Pass ("the Enclave"). According to Plaintiffs, Parkhurst failed to construct those improvements in accordance with benchmark elevations set forth in the Final Plat for the Enclave (*id.* at ¶ 111) and called for the installation of utility lines without an engineer's certification of the grade of the roads and trenches within the Enclave. (*Id.* at ¶ 111.) Plaintiffs also allege that Parkhurst refuses to release invalid mechanic's liens on the Plaintiffs' lots, thereby clouding Plaintiffs' titles to their properties. (*Id.* at ¶ 112.) Plaintiffs have alleged a claim for negligence against Parkhurst.

## FACTS RELATING TO DEFENDANTS SACK, LONG REALTY AND MASON

According to Plaintiffs' Third Amended Complaint, Mason was an employee of West Speedway Partners, LLC ("WSP"), the property development company that sought to subdivide and develop the Enclave. (Doc. No. 136, ¶¶ 21–23, 98.) Mason was in control of the daily operations of the construction of the subdivision improvements for the Enclave. (*Id.* at ¶ 98.) According to Plaintiffs, Mason directed grading of the Enclave to begin prior to the approval of the Final Plat for the Enclave, caused the utilities to be laid prior to the engineer's certification of the grade, and insisted another contractor attempt to correct the grade/cuts after the utility lines were laid. (*Id.* at ¶ 99.)

Pima County approved a Final Plat for the Enclave on January 7, 2004. (*Id.* at ¶ 23.) The Initial Assurance document identified on the Final Plat required WSP to substantially complete all subdivision improvements prior to conveying title to any of the lots within the Enclave on or about November 18, 2007. (*Id.* at ¶ 27.) On December 2, 2004, a Substitute Assurance document was executed by Pima County and Defendant Mason as an authorized member of WSP. (*Id.* at ¶ 30.) The Substitute Assurance Agreement allowed the Enclave lots to be sold prior to substantial completion of the improvements and was secured by a $696,813 performance bond naming Pima County as the beneficiary.[2] According to Plaintiffs,

---

1. The pending Motions to Dismiss and Motion for Summary Judgment relating to Plaintiffs' Third Amended Complaint present similar arguments in favor of dismissal and the parties have incorporated each others' pleadings by reference. Accordingly, the Court hereby incorporates by reference its Report and Recommendations concerning the other pending Motions.

2. Plaintiffs allege that this bond was personally guaranteed by Mason. (Doc. No. 136, ¶ 30). However, review of the bond—attached to Plaintiffs' Third Amended Complaint—does not support this assertion. (Doc. No. 136, Ex. F.)

Pima County failed to record the Substitute Assurance Agreement, and WSP failed to provide notice of the Substitute Assurance to the purchasers of the Enclave lots. (*Id.* at ¶ 31.)

Sack is a licensed Arizona real estate broker, employed by Long Realty, who represented WSP in its sales of Enclave lots to Plaintiffs. (*Id.* at ¶ 17.) Between December 2004 and early 2005, Plaintiffs purchased lots within the Enclave. At the time of purchase, WSP provided Plaintiffs with a public report referencing the Initial Assurance document and stating that improvements would be complete on or before February 28, 2005. (*Id.* at ¶ 28.) Mason and/or Sack represented to Plaintiffs that subdivision improvements were substantially complete and demanded that Plaintiffs close escrow. (*Id.* at ¶ 32, 33.) Mason and Sack negotiated, executed and delivered Purchase Contracts to each of the Plaintiffs which expressly incorporated the Initial Assurance Agreement and advised that a pre-condition to close of escrow would be the "substantial completion" of subdivision improvements. (*Id.* at ¶ 34.) Mason and Sack also published a letter to each Plaintiff from Mason stating that it was time for each Plaintiff to close escrow because the improvements were substantially complete. (*Id.* at ¶ 35.) Some of the Plaintiffs claim that they felt pressured by Sack to close escrow on their Enclave lots because the improvements were substantially complete. (*Id.* at 36.) Plaintiffs allege that Mason and Sack engaged in a concerted effort to induce Plaintiffs into closing escrow for their Enclave lots before the improvements were substantially complete. (*Id.* at ¶ 93.)

According to Plaintiffs, Mason and Sack knew or should have known at the time of sale that WSP was permitted to sell the lots pursuant to the Substitute Assurance Agreement, and not because the improvements were substantially complete as required by the Initial Assurance Agreement. (*Id.* at ¶¶ 37, 92.) Mason and Sack also knew or should have known that the improvements were not complete and would have to be reconstructed because they had been improperly graded. (*Id.* at ¶¶ 26, 38, 39, 92.) Plaintiffs closed escrow on their lots in the Enclave in reliance on the assurances of Mason and Sack. (*Id.* at ¶ 40, 41.) WSP failed to construct the subdivision improvements in a timely manner and filed for bankruptcy on December 15, 2006. (*Id.* at ¶ 44.) In their Third Amended Complaint, Plaintiffs have alleged a state law claim for misrepresentation[3] against Mason, Sack and Long Realty. Plaintiffs have also alleged a state law negligence claim against Mason and Sack.[4] (*Id.* at pgs. 23–26.)

On November 11, 2008, Sack and Long Realty moved to dismiss the claims alleged against them pursuant to Rules 9(b), 12(b)(1)[5] and 12(b)(6), Fed.R.Civ.P. On November 28, 2008, Mason moved to dismiss the claims alleged against him pursuant to Rules 9(b), 12(b)(1) and 12(b)(6), Fed.R.Civ.P. Defendants Mason, Sack and Long Realty contend that Plaintiffs' Third Amended Complaint should be dismissed

---

3. Plaintiffs' Third Amended Complaint captions the misrepresentation claim as a "misrepresentation/mistake" claim. (Doc. No. 136, pg. 23.) Because mistake is not a legal claim but a legal defense, the Court refers to this claim as a claim for misrepresentation.

4. Although Plaintiffs allege that Long Realty is vicariously liable for the acts and/or omissions of its employee, Sack, Plaintiffs allege only their misrepresentation claim against Long Realty. The negligence claim is alleged solely against Mason and Sack. (Doc. No. 136, pgs. 23–26.)

5. Defendants cite to Rule 12(h)(3), Fed. R.Civ.P. as the rule regarding dismissal for lack of subject matter jurisdiction. However, given the current procedural posture of this case, Rule 12(b)(1) applies.

because: (1) supplemental jurisdiction does not exist under 28 U.S.C. § 1367, and (2) Plaintiffs' misrepresentation claim has not been pled with particularity. In addition, Defendants Sack and Long Realty argue that Plaintiffs have failed to comply with A.R.S. §§ 12–2601 *et seq.*, and Defendant Mason contends that Plaintiffs' negligence claim is barred by the economic loss doctrine.

On November 26, 2008, Parkhurst moved to dismiss the negligence claim against it pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. Defendant Parkhurst contends that Plaintiffs' Third Amended Complaint should be dismissed because: (1) supplemental jurisdiction does not exist under 28 U.S.C. § 1367; (2) Plaintiffs have failed to state a claim for negligence; (3) Plaintiffs' negligence claim is barred by the economic loss doctrine; (4) Plaintiffs' allegations regarding Parkhurst's mechanic's lien have no basis in law or fact; (5) Plaintiffs' negligence claim is barred by the statute of limitations and (6) Plaintiffs have failed to comply with the requirements of A.R.S. § 12–2601, *et seq.*

No oral argument was heard on the Motions. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999) (explaining that if the parties provided the district court with complete memorandum of law and evidence in support of their positions, ordinarily oral argument would not be required).

## DISCUSSION

In this Report and Recommendation, the Magistrate Judge recommends that the District Court find that supplemental jurisdiction is not appropriate under 28 U.S.C. § 1367. Because this finding would be dispositive of the negligence claim against Parkhurst and the negligence and misrepresentation claims against Mason, Sack and Long Realty, the Report and Recommendation does not consider the Defendants' additional arguments for dismissal.[6]

### A. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for motions to dismiss for lack of subject matter jurisdiction. The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

### B. This Court lacks supplemental jurisdiction over Plaintiffs' negligence and misrepresentation claims.

Plaintiffs allege that this Court has jurisdiction over the pending action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (federal civil rights jurisdiction) and 1367 (supplemental jurisdiction). Because Plaintiffs have not alleged

---

**6.** The Magistrate Judge notes, however, that Defendant Parkhurst would also be entitled to dismissal of Plaintiffs' Third Amended Complaint because the economic loss doctrine bars Plaintiffs' negligence claims. The basis for this recommendation is set forth in the Report and Recommendation, recommending that the District Court grant the motion for summary judgment filed by Hosack and Des-

ert Vista (Doc. No. 172), which was filed simultaneously with this Report and Recommendation. Plaintiffs' negligence claim against Parkhurst, like their negligence claim against Hosack and Desert Vista, is essentially an attempt to re-cast as a tort claim a contract claim arising from an alleged construction defect.

any federal claims against Parkhurst, Mason, Sack or Long Realty, the Court does not have supplemental jurisdiction over Plaintiffs' state law claims against these Defendants unless the requirements of 28 U.S.C. § 1367 have been met.

■ 28 U.S.C. § 1367(a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction *over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(Emphasis added.) "A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert,* 356 F.3d 969, 978 (9th Cir.2004) (*internal citations omitted*); *see Stevedoring Services of America, Inc. v. Eggert,* 953 F.2d 552 (9th Cir.1992) (*citing S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1091 (9th Cir. 1989)) (pendent claims must derive from a nucleus of operative fact held in common with claims for which there is an independent basis for federal jurisdiction, and they must be such that they ordinarily would be expected to be tried in a single proceeding with the federal claims).

### 1. Federal claims alleged against Pima County.

Plaintiffs allege that their negligence and misrepresentation claims alleged

against Parkhurst, Mason, Sack and Long Realty arise from the same case or controversy as the federal claims they have alleged against Defendant Pima County. In their Third Amended Complaint, Plaintiffs allege that Pima County unconstitutionally applied the law while regulating development and construction of the Enclave. Specifically, Plaintiffs allege that Pima County: (1) negligently approved the Final Plat for the Enclave without noticing elevation flaws in the plans; (2) permitted grading of the subdivision before the Final Plat was approved; (3) accepted inadequate security for a Substitute Assurance Agreement entered into between Pima County and the developer of the Enclave, West Speedway Partners ("WSP"); (4) failed to record the Substitute Assurance agreement; (5) failed to enforce the Substitute Assurance agreement; (6) refused to call the bond securing the Substitute Assurance Agreement or otherwise undertake steps to ensure completion when improvements to the subdivision were not completed in a timely manner,[7] and (7) refused to allow Plaintiffs to obtain permits or otherwise use their properties until the subdivision improvements are completed. (Doc. No. 136 at ¶¶ 25, 31, 43, 45, 62, 69, 75 and 82.) Plaintiffs have alleged a 5th Amendment takings claim and a 14th Amendment substantive due process claim against Pima County, as well as state law claims for gross negligence and promissory estoppel.

### 2. Plaintiffs' negligence claim alleged against Parkhurst does not share a common nucleus of fact with the federal claims alleged against Pima County.

Plaintiffs' negligence claims against Parkhurst do not derive from a nucleus of

---

**7.** WSP failed to complete construction of the Enclave and eventually filed for bankruptcy on December 15, 2006. (Doc. No. 136, ¶ 44.)

The improvements to the Enclave remain incomplete. (*Id.* at ¶ 48.)

operative fact common to Plaintiffs' 5th and 14th Amendment claims against Pima County such that the Court should exercise supplemental jurisdiction. Application of supplemental jurisdiction to the negligence claims would stretch the scope of the statute beyond its constitutional limits.[8] This is not a case in which a plaintiff has alleged both a federal and a state law claim against a defendant whose singular conduct violated the laws of both jurisdictions. *See White v. County of Newberry, S.C.,* 985 F.2d 168 (4th Cir.1993) (exercising supplemental jurisdiction over state law takings claim against County where federal jurisdiction arose under CERCLA claim against County, because both claims required a showing by plaintiffs that the County engaged in the dumping or disposal of TCE in a manner that caused contamination to the plaintiffs' well); *see also Fallar v. Compuware Corp.,* 202 F.Supp.2d 1067, 1071 n. 1 (D.Ariz.2002) (noting its original jurisdiction over plaintiff's federal ADA claim and its supplemental jurisdiction over claim arising under the Arizona Civil Rights Act). Nor is this a case in which numerous defendants are alleged to have worked in concert to commit acts which caused indivisible harm, proof of which establishes liability under both federal and state law. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability,* 510 F.Supp.2d 299, 325 (S.D.N.Y.2007) (exercising supplemental jurisdiction over state law claims alleged against defendants because the claims required similar proof as the federal claims alleged against those same defendants, such as when the defendants knew of the dangers of MTBE and whether MTBE caused harm).

Instead, Plaintiffs in this case seek to assert a variety of state and federal claims against a wide spectrum of defendants allegedly involved in a far-reaching span of events that allegedly caused various harms to Plaintiffs. As such, Plaintiffs case is more akin to *Classic Communications, Inc. v. Rural Telephone Service Co., Inc.,* 995 F.Supp. 1181 (D.Kan.1998). In *Classic Communications,* a telephone company plaintiff sought to enter into new markets in western Kansas. The plaintiff sued numerous Kansas cities and a telephone company competitor already operating in those cities, alleging that the cities and the competitor conspired to exclude the plaintiff from those markets. The district court concluded that it had original jurisdiction over the plaintiff's Lanham Act claim against the competitor, in which Plaintiff alleged that the competitor engaged in a direct marketing campaign making defamatory statements about the plaintiff's products, services and commercial activities. The district court found that it did not have supplemental jurisdiction over the plaintiff's state law anti-trust claim against both the cities and the competitor, in which plaintiff alleged that the defendants conspired to deny plaintiff the opportunity to compete in the telephone business. The court reasoned that "[n]otwithstanding plaintiffs' argument that the claims both relate to plaintiffs' frustrated efforts to expand into western Kansas, the factual findings required under the respective state and federal laws are too divergent to properly allow the exercise of supplemental jurisdiction." *Id.* at 1184; *see also Kirschner v. Klemons,* 225 F.3d 227, 239 (2d Cir.2000) (finding no supplemental jurisdiction over defendant who had contributed to harm suffered by plaintiff because the facts establishing liability were distinct from the facts establishing liability for fed-

---

**8.** The 1998 comments to 28 U.S.C. § 1367 state that "case or controversy" language used in the statute is a reference to the Constitution's own statement of the outer limits of federal jurisdiction.

eral claim alleged against other defendant).

Similarly, in this case, each of the claims in Plaintiffs' action relates to Plaintiffs' frustrated efforts to receive the full value of the lots they have purchased in the Enclave. However, it is not enough that the various defendants were all somehow involved in development and/or construction of the Enclave; nor it is enough that Plaintiffs believe these parties contributed to their alleged harms. *See Didzerekis v. Stewart,* 41 F.Supp.2d 840, 850 (N.D.Ill. 1999) (finding no supplemental jurisdiction over state law wrongful death action against husband who killed his wife, where original jurisdiction stemmed from section 1983 action against police who allegedly failed to timely respond to the wife's 911 call on the night of the murder). Review of the operative facts relevant to Plaintiffs' federal claims against Pima County and state law claim against Parkhurst demonstrates that the claims are as divergent as the claims at issue in *Classic Communications,* and therefore supplemental jurisdiction does not exist.

■ In order to succeed on their Takings Clause claim against Pima County, Plaintiffs must demonstrate that the County has (1) taken the landowner's property by imposing regulations that go too far (2) without tendering just compensation for the taking.[9] *See Del Monte*

*Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1500 (9th Cir.1990). In order to prevail on a claim for violation of substantive due process, Plaintiffs must demonstrate that Pima County engaged in arbitrary and irrational conduct that deprived Plaintiffs of a legally cognizable interest in their real property. *See Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 542, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). Based on these legal frameworks and the allegations of Plaintiffs' complaint, Plaintiffs' federal claims against Pima County will require evidence related to the proposed plat submitted to Pima County, Pima County's negotiations with WSP prior to the sale of the lots, Pima County's alleged duties to purchasers of Enclave lots following purchase, and Pima County's actions following WSP's failure to complete the subdivision.

None of the proof required to establish liability against Pima County involves Parkhurst. In order to prevail on their negligence claim against Parkhurst, Plaintiffs must demonstrate that Parkhurst owed a duty to Plaintiffs, the duty was breached, the breach proximately caused an injury, and the injury resulted in actual damages. *See Ontiveros v. Borak,* 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983). Based on this legal framework and the allegations of Plaintiffs' complaint, Plaintiffs' negligence claim against Parkhurst will require evidence related to whether

---

**9.** It is unclear whether Plaintiffs can sustain claims for both a 5th Amendment taking and a violation of substantive due process. The court in *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.,* 509 F.3d 1020, 1026 n. 1 (9th Cir.2007) explains the distinction between substantive due process and Takings Clause claims: "[The Takings Clause] 'is designed not to limit the governmental interference with property rights *per se,* but rather to secure compensation in the event of otherwise proper interference....' Due process violations cannot be remedied under the Takings

Clause, because 'if a government action is to be found impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.' " Because Plaintiffs' claim alleges improper regulatory conduct by the County, the Takings Clause may not provide an appropriate cause of action. Conversely, if Plaintiffs demonstrate that the County's regulatory conduct was proper but imposed too great a burden on Plaintiffs, then Plaintiffs cannot sustain a claim for substantive due process.

Parkhurst owed a duty to Plaintiffs, whether Parkhurst constructed its improvements in a workmanlike manner, whether Parkhurst's construction complied with the benchmark elevations set forth in the Final Plat, whether Parkhurst prematurely called for installation of utility lines, and whether Parkhurst improperly clouded Plaintiffs' title by recording mechanics' liens against the Enclave lots.

There is insufficient factual overlap between Plaintiffs' federal claims against Pima County and its negligence claim against Parkhurst to conclude that the federal and state claims would ordinarily be tried in a single proceeding. Although Plaintiffs contend that Pima County and Parkhurst were both a part of the same chain of events, they were involved in different links of the chain. Pima County allegedly acted arbitrarily in regulating the planning and development of the Enclave at its inception and again in ensuring completion of the project following WSP's default of its development obligations. Parkhurst allegedly constructed some of the deficient infrastructure under WSP's direction prior to WSP's default. As Parkhurst points out, the *operative facts* related to defendant Pima County and Parkhurst are not related and the determination of these facts would require resolution of different questions. Factual issues relating to the federal claims against Pima County include: did Pima County approve a deficient plat? Were the assurances agreed to by WSP and Pima County adequate? Should Pima County have called the bond after WSP failed to timely construct the improvements? Would the bond have provided adequate funding to complete the project? These questions do not involve Parkhurst at all. Similarly, the *operative facts* and factual questions related to the negligence claim against Parkhurst include: what construction work did Parkhurst perform? Was it performed in a workmanlike manner? Did Parkhurst prematurely call for installation of utility lines? Was it improper for Parkhurst to record mechanics' liens on the lots? These factual issues provide little insight into the facts needed to prove the claims alleged against Pima County. Although both sets of claims may involve testimony from some of the same witnesses, the testimony will concern different subject matter. Although both sets of claims may involve some of the same construction documents, the documents will be relevant for different reasons. *See Chelsea Condominium Unit Owners Ass'n v. 1815 A. St., Condominium Group,* 468 F.Supp.2d 136, 142 (D.D.C.2007) (finding no supplemental jurisdiction over state law claims alleging misrepresentations made during the marketing of condominiums for sale where federal law claims alleged failure to disclose conflict of interest during closings of sales of those same condominiums).

### 3. Plaintiffs' negligence and misrepresentation claims alleged against Mason, Sack and Long Realty do not share a common nucleus of fact with the federal claims alleged against Pima County.

Similarly, none of the operative facts relevant to the federal claims against Pima County are at issue in the misrepresentation or negligence claims alleged against Mason, Sack and Long Realty. Both the misrepresentation claim and the negligence claim alleged against Mason and Sack arise from Mason's and Sack's alleged actions in the sale of the Enclave lots.[10] The two state law claims appear to

---

10. It appears that Plaintiffs may also be alleging that Mason was negligent in his management of the grading work performed during construction of the Enclave lot. (Doc. No. 136, ¶ 99.) To the extent Plaintiffs have stated such a claim, the Court would lack supple-

be pled in the alternative. According to Plaintiffs, Mason and Sack induced them to purchase lots in the Enclaves by assuring them the lots were substantially complete. Plaintiffs allege that either Mason and Sack knew at the time of sale that the improvements were not substantially complete, in which case Mason and Sack are potentially liable for misrepresentation, or Mason and Sack should have known that the improvements were not substantially complete, in which case Mason and Sack are potentially liable for negligence. Proof of either claim will focus on operative facts related to whether Mason and Sack communicated with each of the Plaintiffs regarding the status of the improvements at the time of sale, and what Mason and Sack knew about the status of the improvements when that communication occurred. Regardless of the County's regulation of the development, the state law claims against Mason, Sack and Long Realty stand or fall based on what was done or said during the interactions between Plaintiffs and these individual defendants. Conversely, none of the communications between Mason, Sack and the Plaintiffs would have any operative significance on the regulatory policies adopted and implemented by Pima County.

■ Furthermore, as Defendants Sack and Long Realty point out in their Motion, the claims against Sack, Mason and Long Realty are distinct, separate claims alleged by each individual Plaintiff against each of these defendants. According to the Complaint, Plaintiffs purchased their lots at separate times over a several month-long period. (Doc. No. 136, ¶ 28.) Each Plaintiff must present evidence regarding what each believed at the time of closing, what communication each had with Mason and

Sack, and whether each individual Plaintiff's alleged reliance was reasonable given that individual's circumstances and the state of construction at that time. As such, the state law claims against Mason, Sack and Long Realty are intensely factual. The federal claims against the County, conversely, are almost purely legal: they depend upon what regulations the County enacted and whether those regulations amounted to a deprivation of a constitutionally-protected property interest. Given this disparity between the amount and nature of the evidence relevant to the state law claims against Mason, Sack and Long Realty and the unusual legal issues related to the federal claims alleged against Pima County, trying these cases jointly would not be reasonable or logical. Thus, even if the Court were to conclude that there is supplemental jurisdiction, which it does not, it would be prudent to decline to exercise such jurisdiction in these circumstances. *See* 28 U.S.C. § 1367(c) (a court may decline jurisdiction over a supplemental state law claim if the claim substantially predominates over the claims over which the district court has original jurisdiction).

## C. Declination of Plaintiffs' Request for Exercise of Supplemental Jurisdiction.

■ Plaintiffs contend that this Court should exercise its discretion and assume supplemental jurisdiction over Plaintiffs' state law claims because they have incurred significant costs litigating this matter in federal court and it would be burdensome for Plaintiffs to re-assert their claims in state court. As a threshold matter, as noted above, the Court does not have discretion to adopt supplemental ju-

mental jurisdiction over it as well. Whether Mason owed a duty to Plaintiffs to manage the construction work with reasonable care, and whether he breached that duty by prema-

turely calling for grading and utility line installation, does not involve Pima County in any way.

risdiction where it does not exist under the requirements of 28 U.S.C. § 1367. Furthermore, the equities do not weigh in Plaintiffs favor on this issue. "A plaintiff [who voluntarily files in federal court] cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Moreover, the Court notes that although this case has been pending for over one year, it has not progressed beyond the pleading stage due to Plaintiffs' repeated amendment of their complaint. The procedural history of this case does not weigh in Plaintiffs' favor with respect to the respective financial burdens borne by the parties to date.

**D. Plaintiffs' Third Amended Complaint against Defendants should be dismissed without prejudice.**

██ Because the Court does not have supplemental jurisdiction over Plaintiffs' state law claims alleged against Defendants Parkhurst, Mason, Sack and Long Realty, the Magistrate Judge recommends that the District Court dismiss these Defendants from this action. Generally, dismissal for lack of subject matter jurisdiction should be without prejudice so that the plaintiff may reassert his or her claim in a competent court. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). Plaintiffs should be advised, however, that a dismissal without prejudice of their state law claims should not be regarded as grounds for requesting in this Court leave to amend to cure the deficiencies in their Third Amended Complaint. It does not appear that Plaintiffs can amend their Complaint to cure the jurisdictional defect discussed in this Report and Recommendation. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995) ("In

deciding whether to grant leave to amend, courts are guided by five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the party previously amended its pleadings. Futility alone can justify the denial of a motion for leave to amend.") Furthermore, this is the fourth complaint filed by Plaintiffs in this case, and the District Court's September 8, 2008 Order permitting the filing of a Third Amended Complaint cautioned Plaintiffs that "repeated attempts to amend the complaint may be disfavored as continually amending complaints often slows down a plaintiff's case and may cause other problems." (Doc. No. 133.)

**RECOMMENDATION**

In conclusion, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order GRANTING the Motion to Dismiss filed by Parkhurst on November 26, 2008 (Doc. No. 149) and DISMISSING WITHOUT PREJUDICE the action against Defendant Parkhurst.

The Magistrate Judge further recommends the District Court, after its independent review of the record, enter an order GRANTING the Motion to Dismiss filed by Defendants Sack and Long Realty on November 10, 2008 (Doc. No. 137); GRANTING the Motion to Dismiss filed by Mason on November 28, 2008 (Doc. No. 151); and DISMISSING WITHOUT PREJUDICE the action against Defendants Sack, Long Realty and Mason.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed,

the parties should use the following case number: **CV–08–09–TUC–FRZ.**

DATED this 7th day of May, 2009.

## REPORT & RECOMMENDATION RE: MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS HOSACK AND DESERT VISTA ENGINEERING

Pending before the Court is a Motion for Summary Judgment filed by Defendants Thomas Hosack ("Hosack") and Desert Vista Engineering, LLC ("Desert Vista") on December 3, 2008. (Doc. No. 152.) Plaintiff filed a response on December 22, 2008 (Doc. No. 163) and Defendants timely replied. (Doc. No. 166.)

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a Report and Recommendation. (Doc. No. 37.) The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order granting Defendants Hosack and Desert Vista's Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this action against fourteen Defendants on January 3, 2008. (Doc. No. 1.) Plaintiffs were granted leave to amend their complaint and filed their First Amended Complaint on March 11, 2008. (Doc. No. 33.) Numerous defendants filed motions to dismiss Plaintiffs' First Amended Complaint. While those motions were pending, the Court granted Plaintiffs leave to file their Second Amended Complaint, which Plaintiffs filed on August 11, 2008. (Doc. Nos. 126, 127.) On August 29, 2008, the Court dismissed two

Defendants—West Speedway Partners, LLC and The Villas at Hacienda del Sol, Inc. (Doc. No. 130.) On September 8, 2008, the Court dismissed the remaining motions to dismiss as moot in light of the filing of Plaintiffs' Second Amended Complaint. (Doc. No. 133.) The Court further noted that "this case may be streamlined by allowing Plaintiffs to file a Third Amended Complaint." (*Id.*) Plaintiffs filed their Third Amended Complaint on October 24, 2008. (Doc. No. 136.)

Plaintiffs Third Amended Complaint alleges claims against Defendants Pima County, David A. Mason ("Mason"), Hosack, Desert Vista, M.L. Parkhurst Construction, LLC ("Parkhurst"), Richard A. Sack ("Sack") and Roy H. Long Realty Company, Inc. ("Long Realty"). Motions to dismiss Plaintiffs' Third Amended Complaint have been filed by Defendants Parkhurst, Mason, Sack and Long Realty. (Doc. Nos. 137, 149 and 151.) Defendants Hosack and Desert Vista have filed a Motion for Summary Judgment. (Doc. No. 152.) Defendant Pima County has answered the Third Amended Complaint. (Doc. No. 150.) [1]

Defendants Hosack and Desert Vista do not dispute the facts alleged in Plaintiffs' Third Amended Complaint—at least not for purposes of their Motion for Summary Judgment. The relevant facts as alleged by Plaintiffs are as follows: West Speedway Partners, LLC ("WSP") was a property development company that sought to subdivide and develop property known as The Enclave at Gates Pass ("the Enclave"). (Doc. No. 136, ¶¶ 21–23, 98.) Hosack and Desert Vista were hired prior to the start of development to design tenta-

---

**1.** The pending Motions to Dismiss and Motion for Summary Judgment relating to Plaintiffs' Third Amended Complaint present similar arguments in favor of dismissal and the parties have incorporated each others' pleadings by reference. Accordingly, the Court hereby incorporates by reference its Report and Recommendations concerning the other pending Motions.

tive and final plats for the subdivision. (DSOF 4; PSOF 1.)[2] Plaintiffs purchased lots in the Enclave. (DSOF 1; PSOF 1.) Improvements to the infrastructure of the Enclave were never completed. (DSOF 2; PSOF 1.) Plaintiffs allege that completion of the Enclave development has been prevented by the fact that WSP filed for bankruptcy and stopped working, and because of alleged mistakes by Pima County and various contractors. (DSOF 3; PSOF 1.)

In their Third Amended Complaint, Plaintiffs allege a state law negligence claim against Hosack and Desert Vista. According to Plaintiffs, Hosack, a professional engineer, owed a duty to Plaintiffs as "the owners/users of the resulting product of his work" and as a matter of public policy requiring Hosack to "design the subdivision improvements to conform to the requirements of Pima County and the utility companies." (Doc. No. 136, ¶¶ 14, 105.) Plaintiffs also allege that they fall within the class of persons whom the Arizona state licensing requirements for engineers were created to protect. (*Id.* at ¶ 106.) Plaintiffs allege that Hosack breached his duties to Plaintiffs when he "erroneously described the same benchmark on the Tentative Plat (from which construction was initiated) and the Final Plat, as having two differing elevations without explanation and without providing spot check elevations as a precaution." (*Id.* at ¶ 107.) Plaintiffs further allege that Hosack breached his duties to Plaintiffs when he failed to certify the grade prior to the installation of water and electrical lines. (*Id.* at ¶ 107.) In their Third Amended Complaint, Plaintiffs allege that they had suffered "monetary damages and

actual physical damage to their properties" as a result of Hosack's breach. (Doc. No. 136, ¶ 113.) In their Statement of Facts, Plaintiffs allege that they have also suffered damages including "destruction of the Plaintiffs' utility lines, substantial erosion, the death and destruction of plant life, as well as the improper cuts and grades." (PSOF 2.) Plaintiffs allege that Hosack is an employee of Desert Vista and therefore Desert Vista is vicariously liable for Hosack's alleged negligence. (Doc. No. 136, ¶ 104.)

On December 3, 2008, Hosack and Desert Vista moved for summary judgment on the negligence claim alleged against them pursuant to Rule 56, Fed.R.Civ.P. No oral argument was heard on the motion. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999) (explaining that if the parties provided the district court with complete memorandum of law and evidence in support of their positions, ordinarily oral argument would not be required).

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

**2.** Citation to the parties' statements of facts are abbreviated herein as follows: Defendant Hosack and Desert Vista's Statement of Facts is abbreviated as "DSOF." (Doc. No. 153.) Plaintiffs' Response to Defendants Hosack

and Desert Vista's Statement of Facts is abbreviated as "PSOF." (Doc. No. 164.) Defendants Hosack and Desert Vista's Controverting and Supplemental Statement of Facts is abbreviated as "DCSOF." (Doc. No. 167.)

law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.; see also* Fed.R.Civ.P. 56(c). If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512.

## DISCUSSION

Defendants Hosack and Desert Vista contend that Plaintiffs' negligence claim against them is barred by the economic loss doctrine. Defendants also seek an award of sanctions against Plaintiffs pursuant to A.R.S. § 12–349.

### A. Arizona's economic loss doctrine bars Plaintiffs' recovery in this case.

The economic loss rule, when applicable, bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage. *See Carstens v. City of Phoenix,* 206 Ariz. 123, 126, 75 P.3d 1081 (App.2003). In general, the rule prevents plaintiffs from converting contract claims into tort claims. Where a plaintiff alleges purely economic losses, the damages sound in contract, and tort recoveries are prohibited by the economic loss rule.

The economic loss rule has received limited application in Arizona courts. The Arizona courts have repeatedly recognized the economic loss rule in construction defect cases, where the plaintiff has sustained purely economic loss as a result of faulty construction. *See generally Woodward v. Chirco Constr. Co.,* 141 Ariz. 514, 687 P.2d 1269 (1984); *Colberg v. Rellinger,* 160 Ariz. 42, 770 P.2d 346 (Ariz.App.1988); *Hayden Business Center Condominiums Ass'n v. Pegasus Development Corp.,* 209 Ariz. 511, 105 P.3d 157 (Ariz.App.2005), *overruled on other grounds in Lofts at Fillmore Condominium Ass'n v. Reliance Commercial Const., Inc.,* 218 Ariz. 574, 190 P.3d 733 (2008); *Matusik v. Dorn,* 157 Ariz. 249, 756 P.2d 346 (Ariz.App.1988); and *Nastri v. Wood Bros. Homes, Inc.,* 142 Ariz. 439, 690 P.2d 158 (Ariz.App.1984). The Arizona courts have also recognized the economic loss rule as one factor to consider in determining whether a claim arising from a defective product should be treated as a contract or tort claim. *See Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp.,* 143 Ariz. 368, 694 P.2d 198 (1984), *abrogated on other grounds by Phelps v. Firebird*

*Raceway, Inc.,* 210 Ariz. 403, 414, 111 P.3d 1003 (2005).

Other than construction and product defect cases, however, the Arizona courts have not applied the economic loss rule as a bar to the recovery of economic damages in tort cases. To the contrary, Arizona courts have issued numerous decisions permitting the recovery of purely economic losses in tort actions. *See generally Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 200 Ariz. 146, 24 P.3d 593 (2001); *St. Joseph's Hosp. and Medical Center v. Reserve Life Ins. Co.,* 154 Ariz. 307, 742 P.2d 808 (1987); *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984); *Kuehn v. Stanley,* 208 Ariz. 124, 91 P.3d 346 (Ariz.App.2004); *Luce v. State Title Agency, Inc.,* 190 Ariz. 500, 950 P.2d 159 (Ariz.App.1997); and *Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 945 P.2d 317 (Ariz.App. 1996).

▇▇▇▇ Federal courts have construed Arizona's economic loss rule more broadly than the Arizona courts. Since 1995, Arizona district courts have issued at least thirteen decisions applying the economic loss doctrine to bar recovery in tort claims including negligent misrepresentation, breach of fiduciary duty and conversion. *See Evans v. Singer,* 518 F.Supp.2d 1134, 1143–44 (D.Ariz.2007) (collecting cases). However, in situations " '[w]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it.' " *Id.* at 1139–40 (citing *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 939 (9th Cir.2001)). "In assessing how a state's highest court would resolve a state law question—absent controlling state authority—federal courts look to existing state law *without predicting potential changes* in that law." *Id.* (citation omitted). No reported Arizona state appellate court decision has ever applied, or

even discussed, the economic loss rule outside of the areas of products liability or construction defects. *Id.* at 1142. Accordingly, the issue before the Court in this case is whether the negligence claim alleged by Plaintiffs against Hosack and Desert Vista is "sufficiently similar to those situations where the Arizona Supreme Court has applied the rule to bar recovery of economic losses in tort." *Id.* at 1145.

The "construction defect" cases in which Arizona courts first applied the economic loss doctrine involved homeowners seeking recovery in tort against the builders of their homes for economic losses attributable to defective construction. *See, e.g., Woodward v. Chirco Constr. Co.,* 141 Ariz. 514, 687 P.2d 1269, 1270 (1984) (homeowners sued the builder of their house for both breach of the implied warranty of workmanlike performance and habitability and negligence after large cracks developed in the house walls and foundation, the fireplace separated from the wall, a family room wall shifted forward, the kitchen ceiling began to bow, and the floor warped). The rationale for applying the economic loss rule to construction defect cases has been as follows:

> [C]ontract law and tort law each protect distinct interests. Generally, contract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain.... Its focus, therefore, is on standards of quality as defined by the parties in their contract.... Tort law, in contrast, seeks to protect the public from harm to person or property.... To this end, it evaluates the objective reasonableness of a person's conduct and compensates victims for their actual harm resulting from that conduct.... The economic loss rule thus "serves to distinguish between tort, or duty-based recovery, and contract, or

promise-based recovery, and clarifies that economic losses cannot be recovered under a tort theory." *Calloway v. City of Reno,* 116 Nev. 250, 993 P.2d 1259, 1263 (2000). In the construction defect setting, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law."

*Carstens,* 75 P.3d at 1084 (citing Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C. L.Rev. 891, 895–96 (1989)).

This case differs from a traditional construction defect case in that Plaintiffs are not seeking relief against the Enclave "builder," WSP (which filed for bankruptcy and was previously dismissed from this action).[3] However, this case does arise out of the Defendants' alleged failure to complete a housing subdivision, which makes the construction defect case law relevant. In addition, Arizona courts have applied the economic loss rule in construction cases brought by plaintiffs against parties to the construction other than the builder. *See, e.g., Colberg,* 770 P.2d at 348 (applying economic loss rule to negligence claim against construction supervisor). In the present case, the construction and sale of the Enclave lots was controlled by various contracts between the parties. WSP contracted with Hosack and Desert Vista for engineering of the tentative and final plats for the subdivision. Plaintiffs, in turn, contracted with WSP for purchase of their lots. Plaintiffs now allege that they have not received the "benefit of the bargain," in that homes cannot be constructed on the lots. The harm of which Plaintiffs complain is economic disappointment: Plaintiffs allege a defect in the quality of the product that they purchased, not a harm to their persons or some other property. This "standard of quality must be defined by reference to that which the parties have agreed upon"; in other words, the claim sounds in contract. *Nastri,* 690 P.2d at 164 (citing *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo.1978)).

Plaintiffs contend that they have alleged damage to property other than the lots themselves, specifically "destruction of the Plaintiffs' utility lines, substantial erosion, the death and destruction of plant life, as well as the improper cuts and grades." (PSOF 2.) These alleged damages are not the "harm to person or property" that tort law was designed to protect. *Carstens,* 75 P.3d at 1084. "[A home buyer] can ... seek to recover in tort for injuries sustained due to the contractor's failure to construct the home as a reasonable contractor would. For example, if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the collapse." *Woodward,* 687 P.2d at 1271. The utility lines, cuts and grades at issue in this case are part of the infrastructure of the subdivision, not the individual property of the Plaintiffs. Landscaping is not considered personal property separate from the real property at issue. *See Hayden Business Center Condominiums Ass'n v. Pegasus Development Corp.,* 209 Ariz. 511, 105 P.3d 157 (Ariz.App.2005), *overruled on other grounds in Lofts at Fillmore Condominium Ass'n v. Reliance Commercial Const., Inc.,* 218 Ariz. 574, 190 P.3d 733 (2008);

---

3. The fact that Plaintiffs are unable to pursue a contract claim against WSP is not relevant to the determination of whether Plaintiff may initiate a tort action against Hosack or Desert Vista. *See Carstens,* 75 P.3d at 1085 (economic loss rule applies even when the plaintiff has no contract claim against the specific defendant and application of the rule would therefore leave the plaintiff without a remedy).

*see also Salt River Project,* 694 P.2d at 208 (holding that a product defect which causes damage to the product itself as well as losses for shutdown, start-up, testing costs, and/or loss of profits were incurred does not sound in tort). Plaintiffs are not seeking tort-based damages in this case.

Plaintiffs contend that their case is distinguishable from the construction defect cases in which Arizona courts apply the economic loss rule. According to Plaintiffs, their case is akin to *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984). In *Donnelly,* a school contracted with an architect for design of the school, and with a contractor for construction of the school. The architect produced negligent designs which caused the contractor to incur economic damages during construction, and the contractor sued the architect for negligence and negligent misrepresentation. The architect contended that without privity of contract, it owed no duty to the contractor and could not be liable in tort. The Arizona Supreme Court disagreed, and held that "design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services." *Id.* at 1296.

It is unclear whether *Donnelly* has any precedential value. In *Gipson v. Kasey,* 214 Ariz. 141, 150 P.3d 228 (Ariz.2007), the Arizona Supreme Court overruled *Donnelly* to the extent that *Donnelly* held that foreseeability is a factor in determining whether a duty exists.[4] Regardless, *Donnelly* is not persuasive in this case. First, the economic loss rule was not at issue in *Donnelly* and was never mentioned. Second, to the extent that *Donnelly* permits an award of purely economic damages in a tort claim, it does so under circumstances

that do not apply in this case. As the *Carstens* court stated, "the *Donnelly* court's allowance of the negligence claim against the architects hinged on the special situation in which the contractor, although not in privity of contract with the architects, had to rely directly upon their work." *Carstens,* 75 P.3d at 1087. The court noted "Of course, the property owner in *Donnelly* had entered into contract with both the contractor and the architects, which contemplated that the contractor would rely upon the architects' services." *Id.* at 1087, nt. 4. No such special situation exists in this case. Although Hosack engineered the plats for the Enclave, and Plaintiffs eventually purchased lots in the Enclave, there was no intermediate contract in place contemplating that Plaintiffs would rely on Hosack's engineering in the performance of their own duties. Moreover, Plaintiffs have alleged that they purchased their lots in reliance on representations made by Mason and Sack that subdivision improvements were substantially complete. (Doc. No. 136 at ¶ 32, 33.) Given these allegations, Plaintiffs could not be considered to have been in the "care" of Hosack and Desert Vista in the same way that the *Donnelly* contractor was in the care of the architects. *See Carstens,* 75 P.3d at 1087 (holding that homebuyers who relied on seller's representations that all material defects in home had been disclosed could not be considered to have been in the "care" of city inspectors who inspected the home for latent defects.)

Thus the Magistrate Judge concludes that Plaintiffs' negligence claim, as set forth in their Third Amended Complaint and Separate Statement of Facts, is an attempt to circumvent contract remedies by re-casting their contract claims against

---

**4.** Plaintiffs cited to *Donnelly* without reference to the fact that the case has been over- ruled.

WSP as tort claims against Hosack and Desert Vista. As such, the claim is barred, as a matter of law, by the economic loss rule.[5]

### B. Plaintiffs' Third Amended Complaint should be dismissed with prejudice.

Because the economic loss doctrine bars Plaintiffs' recovery in tort against Hosack and Desert Vista, this Court recommends that the District Court dismiss Hosack and Desert Vista from this action. In their response to the Motion for Summary Judgment, Plaintiffs argue that if the economic loss doctrine bars their recovery in tort, they should be granted leave to amend their complaint in order to state a third-party beneficiary contract claim against Hosack and Desert Vista. The Magistrate Judge recommends that Plaintiffs' request for leave to amend be denied, and that the dismissal of Hosack and Desert Vista be *with prejudice.* This is the fourth complaint filed by Plaintiffs in this case. Plaintiffs were on notice that their negligence claim could potentially be barred by the economic loss rule prior to the filing of their Third Amended Complaint, but declined to plead any alternative claims. (DCSOF 1.) The District

Court's September 8, 2008 Order permitting the filing of a Third Amended Complaint cautioned Plaintiffs that "repeated attempts to amend the complaint may be disfavored as continually amending complaints often slows down a plaintiff's case and may cause other problems." (Doc. No. 133.) Further amendment of Plaintiffs' complaint would result in undue delay and prejudice to the opposing party. *See Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995) ("In deciding whether to grant leave to amend, courts are guided by five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the party previously amended its pleadings. Futility alone can justify the denial of a motion for leave to amend.")[6]

### C. Defendants Hosack and Desert Vista seek an award of attorneys' fees pursuant to A.R.S. § 12–349.

■ Hosack and Desert Vista seek an award of attorneys' fees in this case pursuant to A.R.S. § 12–349, which permits the court to assess attorneys' fees against a party who brings or defends a claim without substantial justification. A claim is "without substantial justification" if it constitutes harassment, is groundless and is

---

**5.** Although Defendants Hosack and Desert Vista did not challenge the Court's subject matter jurisdiction, the Court may consider the issue of subject matter jurisdiction at any time and must dismiss an action if it determines that subject matter jurisdiction is lacking. *See* Rule 12(h)(3), Fed.R.Civ.P. For the reasons stated in this Report and Recommendation recommending that the District Court grant the motions to dismiss filed by Defendants Parkhurst, Mason, Sack, and Long Realty (Doc. No. 171), Defendants are also entitled to dismissal of Plaintiffs' negligence claims because the Court lacks supplemental jurisdiction over the claim.

**6.** In addition, the Court suspects that amendment of the complaint in order for Plaintiffs' to allege that they were third party beneficia-

ries of the contract between WSP and Hosack/Desert Vista would be futile. In order to recover as a third party beneficiary of a contract, three elements must be present: (1) the contract must indicate an intention to benefit the third party beneficiary, (2) the contemplated benefit must be both intentional and direct, and (3) it must be clear that the parties intended to recognize the third party as the primary party in interest. *Norton v. First Fed. Sav.,* 128 Ariz. 176, 624 P.2d 854, 856 (1981). Throughout the course of these proceedings, the Court has not seen any allegation or evidence suggesting that when WSP contracted with Hosack/Desert Vista for engineering of the tentative and final plat for the Enclave, the parties intended Plaintiffs to be the primary party in interest.

not made in good faith. *See* A.R.S. § 12–349(E). The Magistrate Judge does not recommend an award of attorneys' fees in this case. In order to award attorneys' fees pursuant to A.R.S. § 12–349, the court must find that each of the three elements identified in A.R.S. § 12–349(E) is present and proven by a preponderance of the evidence, with the absence of even one element rendering the statute inapplicable. *See City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 20 P.3d 590, 598 (App.2001). Hosack and Desert Vista have not presented any evidence to suggest that Plaintiffs pursued their negligence claim against Hosack and Desert Vista for purposes of harassment. Moreover, given that the Ninth Circuit recently observed that "outside the product liability context, the [economic loss] doctrine has produced difficulty and confusion," *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir.2007), it is not evident that Plaintiffs pursued their argument against application of the economic loss doctrine in bad faith.[7]

### RECOMMENDATION

The Magistrate Judge recommends the District Court, after is independent review of the record, enter an order GRANTING the Motion for Summary Judgment filed by Defendants Hosack and Desert Vista on December 3, 2008 (Doc. No. 152) and DISMISSING WITH PREJUDICE the claims alleged against Defendants Hosack and Desert Vista.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed,

the parties should use the following case number: **CV–08–09–TUC–FRZ.**

DATED this 6th day of May, 2009.

---

7. Hosack and Desert Vista made their request for attorneys' fees in their Reply. Thus, Plaintiffs were not given an opportunity to respond to the request.